## HALL v. NUNN ELECTRIC CO. (No. 1544.)

(Court of Civil Appeals of Texas. Amarillo. May 28, 1919. Rehearing Denied June 11, 1919.)

1. GARNISHMENT &#9758;4 — UNLIQUIDATED DEMAND.

Where the contractor and the owner had settled by letters the amount due on the construction of an irrigation plant when the owner was made garnishee in an action against the contractor, the objection that the demand was unliquidated and not subject to garnishment must fail.

2. GARNISHMENT &#9758;109—RIGHT TO COLLECT DEBT—ASSIGNMENT OF CONTRACT.

Where intervener procured a transfer from one acting for the garnishment debtor, contractor, for the benefit of intervener's principal, he took the construction contract as originally made between the owner and the contractor and the amount due thereon as fixed cum onere, and intervener acquired no better right to the debt for constructing the irrigation plant than the contracting corporation had, and the prior service of garnishment writ prevented voluntary payment by owner, and the superior right to the money was in garnishor.

---

3. GARNISHMENT �köm164—LIABILITY OF GAR-
NISHEE — FUNDS DUE GARNISHMENT DE-
FENDANT—EVIDENCE.

Evidence *held* sufficient upon which to base
a finding that when the garnishment writ was
served the owner, garnishee, was indebted to
contractors, defendants in garnishment, so that
there were funds belonging to the latter in gar-
nishee's hands when the writ was served.

4. EVIDENCE ⊙═230(3) — VENDOR'S IMPEACH-
MENT OF PURCHASER'S TITLE—ADMISSIBIL-
ITY.

The objection to the testimony of witnesses,
stockholders of a corporation, which took from
a partnership an assignment of a contract to
construct an irrigation plant, assigned to a
trustee preliminary to obtaining the corporate
charter, who held it for the corporation, made
on the ground that declaration of grantor after
execution and delivery of deed is not admissible
to impeach vendee's title, cannot be sustained,
where the rights of the parties are based up-
on a common source, and where the testimony
does not impeach intervener's title, but estab-
lishes his right subject to prior garnishment,
since garnishor, not a party to the transfer,
could show in whom was lodged the right to
the debt.

5. GARNISHMENT ⊙═158 — ALLEGATION OF
HOLDING CONTRACT IN TRUST — CONTRO-
VERTING ANSWER.

An objection that garnishor in controverting
answer did not allege that the garnishee and
intervener knew that the trustee held the con-
struction contract under which the debt was
garnished for any other person than himself
*held* not well taken; such allegation being un-
necessary, where it was alleged that such trus-
tee was holding it in trust for the contractor
corporation.

6. WITNESSES ⊙═217—ATTORNEY AND CLIENT
—OBJECTION BY ONE OTHER THAN THE CLI-
ENT.

In a garnishment proceeding, where neither
the garnishee owner nor his attorney object-
ed to the attorney's being a witness, nor to the
introduction of letters coming into witness'
possession as such attorney, the intervener is
not in a position to urge them inadmissible be-
cause of the relationship of attorney and client.

7. LIS PENDENS ⊙═24(1)—PURCHASE OF CON-
TRACT PENDENTE LITE—EFFECT OF ASSIGN-
MENT—GARNISHMENT.

Where letters in evidence fixed the amount
due from an owner to a corporation construct-
ing an irrigation plant and subsequently inter-
vener in garnishment proceedings against con-
tractor purchased the construction contract,
the rights of the parties were fixed before pur-
chase, and intervener could recover no more
than the amount fixed by such agreement.

8. GARNISHMENT ⊙═163—GARNISHEE'S SET-
TLEMENT WITH GARNISHMENT DEBTOR—EVI-
DENCE—ADMISSIBILITY.

The testimony of one of garnishor's officers,
to the effect that he talked with the garnishee
owner before the garnishment was served about
the owner's agreement with the garnishment
debtor, contractor, and that the owner said he

had agreed upon terms of settlement, *held* ad-
missible.

Error from District Court, Hale County;
R. C. Joiner, Judge.

Suit by the Nunn Electric Company, a co-
partnership, against the Hickox-Whyman En-
gineering Corporation and others, in which a
writ of garnishment was issued against L. C.
Wayland, and Ira W. Hall intervened. From
a judgment therein in favor of the Nunn Elec-
tric Company, Ira W. Hall brings error.
Judgment affirmed.

See, also, 183 S. W. 13.

Veale & Lumpkin, of Amarillo, and Cooper
& Merrill, of Houston, for plaintiff in error.
Kimbrough, Underwood & Jackson, of Ama-
rillo, and Graham & Graham and Williams
& Martin, all of Plainview, for defendant in
error.

HUFF, C. J. The defendant in error,
Nunn Electric Company, a copartnership, on
the 20th day of June, 1913, in a suit by it
against Hickox-Whyman Engineering Cor-
poration, and R. O. and R. H. Whyman, to
recover $1,140.55, caused to be issued out of
said suit a writ of garnishment against L.
C. Wayland, commanding him to answer what
he was indebted, etc., to the above-named
defendants in the suit then pending. The
writ was duly served on Wayland June 21,
1913. In answer to the writ Wayland denied
being indebted, etc. This answer was con-
troverted by defendant in error. The plain-
tiff in error Hall intervened, setting up his
right to a certain contract and property.
The defendant in error afterwards reduced
its claim against the engineering corpora-
tion and the other parties in this suit to a
judgment. The controversy in this case is
between plaintiff in error and defendant in
error to the sum of $1,140.55, deposited in
the district court with the clerk to await the
result of the suit by L. C. Wayland, the par-
ties hereto agreeing that no judgment should
be taken against Wayland, and that the con-
troversy was between the parties to this ap-
peal, over the $1,140.55. On the 20th day of
November, 1912, Whyman Bros., a copartner-
ship, composed of R. O. and R. H. Whyman,
entered into an agreement with L. C. Way-
land and wife to drill, erect, and construct
for Wayland on his land an irrigation well
and plant, in accordance with certain speci-
fications referred to, and in consideration
of such completed improvements Wayland
agreed to pay $3,400, $400 cash and three
notes, of $1,000 each, due and payable two
years from the 1st day of February, 1913.
The cash and notes with the copy of the con-
tract were to be deposited in the First Na-
tional Bank of Plainview, Tex., there to be
held until the improvements were completed

according to contract, and upon such completion the notes and cash were to become the property of Whyman Bros., and to secure which it was agreed a mechanic's lien was created by the contract. The well and improvements were to be completed by the 1st day of February, 1913. The specifications referred to in the contract gave the specifications for the well, its covering, housing, etc., calling also for a pump of certain size and make, and guaranteed to discharge 1,000 gallons per minute, also a 50 H. P. Foos engine, together with other machinery, parts, improvements, and the like, and had attached thereto the following guaranty:

"Equipment is guaranteed to deliver 1,100 gallons per minute, measured over weir in the ditch and to be satisfactory in every respect, which means that the notes are not to be delivered to parties of the first part (Whyman Bros.) unless by February 1, 1913, they turn the well and machinery over to the party of the second part (Wayland), pumping 1,100 gallons of water per minute regularly."

On January 15, 1913, Whyman Bros. transferred the above contract, together with others, to Walter I. Busby. The evidence in this case is sufficient to show that the contract was transferred to Busby in trust. Whyman Bros. and others it appears had decided to form a corporation to perform the contracts so transferred and to complete the work. Busby was holding said contracts in trust for the proposed corporation. Afterwards a charter was obtained under the name of Hickox-Whyman Engineering Corporation. The stockholders thereof were R. O. Whyman, R. H. Whyman, D. L. Hickox, Mart McKnight, and Walter I. Busby. D. L. Hickox was its president, R. O. Whyman, vice president and general manager, and W. I. Busby, secretary and treasurer. The transfer was made to Busby, as shown by the evidence, because the parties were uncertain in obtaining the charter, and they were not certain as to the time it would be issued, and for the protection of the proposed corporation. Under Busby and the corporation after its organization the irrigation plant was prosecuted to completion, but some time after the date agreed upon in the original contract. Upon completion it was found the well and plant would not deliver 1,100 gallons of water, as agreed upon and guaranteed. Wayland refused to accept the plant and well, or to authorize delivery of the notes executed by him and placed in escrow in the bank. This resulted in negotiations between Wayland and the Hickox-Whyman Engineering Company, and on June 4, 1913, the corporation, with its name signed thereto by W. I. Busby, secretary, wrote Wayland, answering a proposition theretofore made by him, stating in its letter it could not accept the offer of $2,000 but that it would be willing to accept $2,250 cash and turn every-

thing over to him, with the exception of some tools. On June 9, 1913, Wayland replied:

"Having duly considered your offer of June 4th, and what you say relative to same, but I am still of the same mind as when I made the offer of $2,000.00. However, I will make it $2,125.00, and deduct the open account of Mr. Whyman, less the amount of oil not used. The amount is about $70.00. Now this amount cash will liquidate all indebtedness and give me a clear release from your company; however, I will ask a week after you let me know, in which to arrange for the money."

On June 17, 1913, Wayland again wrote the corporation that he had not heard from them, and that he took it that it would move the outfit, as he had not heard from his letter of June 9th, and unless he heard by return mail he would make arrangements accordingly. On June 14, 1913, the corporation, through Busby, wrote Wayland from Hurney, instead of Amarillo, where the former letters were mailed, acknowledging receipt of the letter of the 9th, which had been forwarded:

"In reply will say that we accept your compromise offer in settlement for the well and equipment, giving you same clear of incumbrance."

On June 21, 1913, Wayland wrote, acknowledging receipt of the letter of June 14th, stating that he was ready to make settlement upon release of property; also stating that Mr. Nunn was there the first of the week, and, thinking he would see the members of the corporation, gave him the papers to be signed by the company, but, instead of that, he had been that day served with a writ of garnishment in the case of Nunn Electrict Company v. Hickox, etc., and also by a writ in the case of B. B. Morton against Wayland. He stated further he would await reply as to adjustment, as he was denied further exercise in the matter, but that he was ready to settle when everything was arranged. J. E. Nunn, of the Nunn Electric Company, and Wayland both testified that Nunn saw the letter of acceptance by the corporation dated June 14th before the garnishment was served. He saw the letter about June 20th, and that Wayland said at that time that he had settled with the corporation on the terms named in the letter. On the 8th day of July, 1913, W. I. Busby transferred the contract in question, dated November 20, 1912, between Wayland and Whyman Bros., in consideration of the sum of $2,050 to Ira W. Hall, transferring also the lien by virtue of said contract. Busby says the reason this transfer was made to Hall was that the Hickox-Whyman Engineering Corporation was indebted to the Foos Gas Engine Company, and that Hall was acting as its agent in the matter, and to secure the Foos Gas Engine Company. This witness also testified that at the time of

making the transfer Hall and himself knew that the garnishment had been served on Wayland June 21, 1913. Hall, however, testified that he did not know of the garnishment. Busby and Whyman's testimony is to the effect that Busby was trustee for the corporation in holding the contract in his name, and that the transfer was made to secure a debt due by the corporation to Foos Gas Engine Company, for whom Hall was acting in taking the transfer; and Hall's testimony is also substantially to the same effect, and that he held the contract and transfer in trust for his company, the Foos Gas Engine Company. On July 27, 1913, L. C. Wayland and the Foos Gas Engine Company, acting through its agent, I. W. Hall, entered into a written contract, the effect of which was to transfer to Wayland all machinery, pumping plant, etc., on Wayland's land, in consideration of $1,900, to be deposited in the bank to protect Wayland against any claims legally existing against the plant for labor and material, and stipulating, if none existed or were filed within 30 days, then $1,140.55 was to be deposited with the clerk of the district court, and held subject to the orders of the court in the case of Nunn Electric Company v. L. C. Wayland, Garnishee, the balance, after satisfying all claims against the plant, to be delivered to Foos Gas Engine Company. It is further stipulated that Hall was to execute a release of the mechanic's lien upon the deposit of the $1,900, and to return the cash and notes held in the bank under the original contract, but if the lien was not released the $1,900 was to be refunded, as well also as $150, which that day had been advanced by Wayland to Hall.

The evidence is sufficient to authorize the finding that Wayland's contract with Hall was based upon the settlement agreement effected by correspondence between Wayland and Hickox-Whyman Engineering Corporation. That is $2,125 for the pump, machinery, and plant, and that this included the item of $70 or $75, which R. O. Whyman owed to Wayland, and also $150, lien filed by Mr. Morton against Wayland. The contract showing that Wayland deposited $1,900 for Hall, and also advanced $150, all of which was to be returned if the land was not cleared of the lien, or if the escrow deposit of $500 and the three notes were not returned him. The payment of the $1,900, plus $150 and plus $75 due Wayland from Whyman, and which under the settlement was to be allowed, makes the contract with Hall exactly the amount agreed to be paid for the plant, $2,125, as shown by the settlement which was effected by the correspondence.

[1, 2] The first assignment and proposition thereunder assert that when the garnishment was served, and up until the contract with Hall, July 27, 1913, was executed, the claim against Wayland was an unliquidated demand, and therefore not subject to garnishment. On the former appeal under the record as then made, this court so held. 183 S. W. 13. It was then said:

"In this case, at least at the time the writ of garnishment was served, we can see no obligation of indebtedness from Wayland to Whyman Bros., or the engineering corporation."

However, on this record it is shown the dispute as to the liability under the original contract for the irrigation plant was settled by letters before the garnishment writ was issued or served, and the price for the plant and the work fully agreed upon and fixed at $2,125, vesting in Wayland the title to the plant and fixing the amount due under the contract. When Hall procured a transfer from Busby, who was acting for the corporation, and for the benefit of Hall's principal, the Foos Gas Engine Company, he took the contract as originally made by Wayland, and the amount due thereon as fixed by agreement cum onere; in other words, he stepped into the shoes of the engineering corporation. His contract of July 27th with Wayland evidences this fact, and he thereby confirmed the settlement theretofore made, accepting the same amount. This contract confirmed the title to the plant in Wayland at the agreed price, and upon payment of the amount agreed upon released all liens. The plaintiff in error acquired no better right to the debt or property by the transfer to him than the engineering corporation or Busby had. The service of the writ prevented a voluntary payment of the debt by Wayland. The superior right to the money was in the defendant in error by virtue of the writ of garnishment, and the creditor could not invest plaintiff in error with a better right than it had. Gause v. Cone, 73 Tex. 239, 11 S. W. 162. The first assignment will be overruled.

[3] The second assignment presents the proposition that to hold one liable as garnishee it must appear that he had funds in his hands at the date the writ was served or at the date of the filing of his answer, belonging to the defendant in garnishment. We think the proposition asserts a correct proposition of law, but we find that the trial court had sufficient evidence upon which to base a finding that when the writ was served Wayland was indebted to the defendants in garnishment, and therefore overrule the assignment for the reason heretofore set out, and under the facts of the case as stated.

[4] The third, fourth, fifth, sixth, seventh, and eighth assignments assert there was error in permitting the witnesses, W. I. Busby, R. O. Whyman, and D. L. Hickox to testify to the effect that Whyman Bros., in assigning the contract to Busby, did so as preliminary to obtaining a charter for a corporation, and to hold in trust for the corporation, and that he did so hold it. The

proposition is presented that evidence or declaration of a grantor after the execution and delivery of the deed is not admissible to impeach the vendee's title. This evidence did not have that effect, and, besides, the purpose or declaration of the purpose was not made after the execution and delivery of the transfer to Hall. The effect of the testimony is simply to explain in whom was held the legal title and in whom was the equitable interest. In fact, the transfer to Hall shows that the consideration was not paid to Busby, but the transfer was upon the consideration that the engineering corporation was indebted to the Foos Gas Engine Company. To secure that indebtedness the transfer was made. The rights of both the plaintiff in error and defendant in error are based upon the same common source, that is, the Hickox-Whyman Engineering Corporation; hence the testimony does not impeach the plaintiff in error's title, but establishes his right thereto, subject, of course, to the prior garnishment. The transfers in this case are in effect only collateral to the issues between the parties to this cause, as both obtained their rights from the same common source. The defendant in error was not a party to any of those transfers, and hence could show in whom was lodged the right to the debt in fact, and had the right to fully inquire into the matter and show that it was held in Busby in trust for his corporation. Hudson v. Wilkinson, 45 Tex. 444; Cuney v. Dupree, 21 Tex. 211; Kahle v. Stone, 95 Tex. 106, 65 S. W. 623.

The ninth assignment will be overruled. The assignment and proposition we do not regard as correct propositions of law as applied to this case.

[5] The tenth assignment and proposition are to the effect that defendants in error, in their controverting answer, did not allege that the garnishee and intervener knew that W. I. Busby held the contract for any other person than himself. We do not think it was necessary to allege such fact. It was alleged that Busby was holding it in trust for the corporation. The assignment we think shows no error.

[6, 7] The eleventh assignment complains that the court erred in permitting a Mr. Graham to produce and read in evidence the letters between Wayland and the Hickox-Whyman Engineering Corporation, heretofore set out, because: (1) The letters came into the possession of the witness by reason of the relationship of attorney and client; (2) because they are not binding upon Hall, as they were between parties not interested in this suit; (3) the letters were not written by intervener, and would not bind him. The witness was attorney for Wayland in filing his answer in this cause, and was also his adviser in the settlement, etc. Neither he nor Wayland objected to the introduction of the letters. We do not think plaintiff in error is in position to urge the relationship of attorney and client. The letters fixed and established the amount due from Wayland to the Hickox-Whyman Engineering Corporation before Hall purchased the same. He bought such contract, and the rights of the parties were fixed before he purchased. He could recover no more than Wayland was due thereon, and in fact claimed no more, and accepted the amount agreed upon. His rights were in privity with Wayland and the corporation, and he was bound by their agreement fixing the amount. As to those parties the question of notice was immaterial. Hall purchased pendente lite, and lis pendens applies. He took no greater right than his vendor had.

[8] The twelfth assignment is to the testimony of J. E. Nunn, to the effect that he talked with Wayland before the garnishment was served about the agreement in which Wayland said he had agreed upon the terms of the settlement. We think there was no error in admitting the testimony, for the reasons heretofore given.

The judgment will be affirmed.

---

⟐═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes