## KNOX v. DAMASCUS CORPORATION.
### No. 11858.

Court of Civil Appeals of Texas. Galveston.
Feb. 27, 1947.

Critz, Kuykendall, Bauknight, Mann & Stevenson, of Austin, for appellant.

Fulbright, Crooker, Freeman & Bates and Eugene N. Catlett, all of Houston, for appellee.

MONTEITH, Chief Justice.

This suit was brought by Will G. Knox, as liquidator of the Board of Insurance Commissioners of the State of Texas, and as the receiver of the Southern Underwriters, a reciprocal insurance exchange, for the recovery from appellee, the Damascus Corporation, of the sum of $500 alleged to be the balance due as advance deposits on policies of workmen's compensation and public liability insurance issued to said Damascus Corporation during the insolvency period of the Southern Underwriters.

In its answer Damascus Corporation pleaded that the alleged indebtedness had been settled by a compromise agreement. By amended answer it pleaded release and estoppel.

In a trial before the court judgment was rendered in favor of defendant, Damascus Corporation. No findings of fact or conclusions of law were requested by the parties or filed by the trial court.

The material facts are undisputed in the record. They are substantially as pled.

The record reflects that Will G. Knox was the duly appointed and acting liquidator of the Board of Insurance Commissioners of the State of Texas and that he had been appointed and was the acting receiver of the Southern Underwriters, a reciprocal insurance exchange duly organized under pertinent statutes of this State; that the Southern Underwriters had issued policies of insurance to numerous subscribers, including six policies to Damascus Corporation. The record shows that the Damascus Corporation had been originally chartered under the corporate name of LaJita Corporation and that at all times material to this suit the two corporations had been one and the same corporation, operating at different times under one or the other of the two names. It is undisputed that the Southern Underwriters had issued to Damascus Corporation and/or Texita Pipe Line Company two policies of insurance, a Workmen's Compensation Policy No. 6140 and a Public Liability Policy No. 1721, covering the periods from March 31, 1938, to March 31, 1939, on which the advance deposits due amounted to the sum of $71, and that it had issued to the Damascus Corporation in the name of LaJita Corporation and/or John F. Camp Drilling Company, four policies of insurance, including Workmen's Compensation Policy No. 1820-1, Public Liability Policy No. 704-1, Workmen's Compensation Policy No. 1820-2, and Public Liability Policy No. 704-2. The two policies first mentioned were issued August 6, 1936, and expired August 6, 1937, and the two policies last mentioned were issued August 6, 1937, and expired August 6, 1938. This suit was brought for the recovery of the advance deposits provided for in these four policies, amounting to the total sum of $500.

The contract and agreement between Southern Underwriters and its subscribers, including Damascus Corporation and LaJita Corporation, obligated such subscribers to keep their advance deposits intact as a surplus to provide for the payment of their proportional part of losses and expenses incurred and to promptly pay all demands for moneys to be used for the purposes set forth in said agreement.

The 53rd District Court, in which the receivership of the Southern Underwriters Corporation is pending, found the Southern Underwriters Corporation to be insolvent and that a necessity existed for the appointment of a receiver. The court appointed Will G. Knox, who was the liquidator of the Board of Insurance Commissioners of the State of Texas, receiver for said company and directed him to take charge of the assets and affairs of the Southern Underwriters and to take such steps as might be necessary to liquidate the affairs of said concern, subject to the further orders of the court.

In its judgment the court ordered such receiver to make demand on each subscriber of the Southern Underwriters that it place intact its advance deposit as shown in each and every policy of insurance in force on and after December 31, 1936, and directed the receiver to institute such suits as might be necessary to enforce his order, judgment and decree.

By letter to Damascus Corporation dated September 7, 1945, Will G. Knox, receiver, made demand on such corporation that it make good its contract to keep intact its advance deposits on the two policies of insurance issued to Damascus Corporation and/or Texita Pipe Line Company on Workmen's Compensation Policy No. 6140 and Public Liability Policy No. 1721, amounting to the sum of $71. This letter specifically set out and described the two policies made the basis of the demand. After receiving the above letter, Damascus Corporation forwarded to Will G. Knox, receiver, by check, the sum of $71. The letter from the Damascus Corporation, to the receiver, omitting the formal parts, reads:

"Re: Claim of Will G. Knox, Receiver of the Southern Underwriters – $71.00 Damascus Corporation and/or Texita Pipe Line Company.

"Dear Sirs:

"Enclosed herewith this company's check for $71.00, payable to Will G. Knox, Receiver of The Southern Underwriters, in full settlement of the above captioned claim.

"Will you please deliver this check to Mr. Knox and ask him to mail us an official receipt showing this remittance.

"Yours very truly,
"Damascus Corporation
"/s/ By Pauline Jones
"Secretary-Treasurer."

Upon receipt of this letter and check Will G. Knox, receiver, mailed to Damascus Corporation the following instrument in writing:

The State of Texas:
County of Travis:

"Know All Men By These Presents: That

"Whereas, Will G. Knox of Travis County, Texas, Liquidator for the Board of Insurance Commissioners of Texas and in his capacity as Receiver for The Southern Underwriters, in receivership, in Cause No. 66,098, in the 53rd Judicial District Court of Travis County, Texas, styled The State of Texas vs. The Southern Underwriters, is asserting a claim against Damascus Corporation &/or Texita Pipe Line Company such claim being based upon policies of said insurance issued by The Southern Underwriters to the said Damascus Corporation &/or Texita Pipe Line Company; and,

"Whereas, there is a bona fide dispute and difference between the parties as to the validity of said claim; and, in order to settle such dispute and difference, the parties have agreed upon a full and final settlement and compromise of the above described claim and of all the causes of action, damages, liabilities, expenses, and costs arising by reason of the insurance of said policies and by reason of said claim, whether heretofore or hereafter accruing or whether now known or not known to the parties hereto:

"Now, therefore, the undersigned, Will G. Knox, as Liquidator for the Board of Insurance Commissioners and as Receiver in the above entitled and numbered cause, for and in consideration of the sum of Seventy-one Dollars ($71.00) in cash to him in hand paid, the receipt of which is hereby acknowledged and confessed, does hereby and by these presents forever release and forever discharge the said Damascus Corporation &/or Texita Pipe Line Company of and from any and all liabilities, causes of action, claims, damages, expenses, costs, demands, or suits whatsoever which the said Will G. Knox now or may hereafter have against said Damascus Corporation &/or Texita Pipe Line Company in the above entitled and numbered cause, or which may hereafter arise by reason of the issuance of said policies; it being the intent and purpose of the said Will G. Knox to give the said Damascus Corporation &/or Texita Pipe Line Company a full, complete and unconditional release covering all claims of every kind and character, whether now known or not known, or which may hereafter accrue as a result of the issuance of said policies.

"Executed this the 28th day of January, A. D. 1946.

"(s) Will G. Knox, Liquidator for the Board of Insurance Commissioners and Receiver of and for The Southern Underwriters."

In the same envelope the receiver wrote the Damascus Corporation the following letter:

"Re: The Southern Underwriters, in Receiver – No. 23 Advance Deposit Call – Damascus Corporation &/or Texita Pipe Line Company – $71.00.

"Gentlemen:

"We have and thank you for your letter of January 25th enclosing your check No. 2562 for $71 in payment of the above. Release, properly executed by Will G. Knox, Receiver of The Southern Underwriters, is enclosed as requested.

"Yours very truly,
"/s/ J. D. Wheeler,
"Deputy Liquidator."

Appellant contends that judgment should have been rendered in its favor for the alleged reasons that (1) the instrument dated January 28, 1946, and claimed by Damascus Corporation to be a release of the items sued for herein aggregating the sum of $500, does not in fact release or purport to release the four items comprising the claims on which this suit is based; and (2) that the instrument claimed by Damascus Corporation to release the four items made the basis of this suit is void, because it does purport to release and settle the items here sued for, it was executed

and delivered by the receiver without legal authority, because the receiver had no authority to compromise these claims without authority from the court appointing him, and that it is undisputed that no such authority was ever given.

It is undisputed that at the time the Southern Underwriters wrote the Damascus Corporation demanding payment of the claims due under the two policies in favor of Damascus Corporation and Texita Pipe Line Company that appellee was indebted to Southern Underwriters in the sum of $500 for the four policies sued on herein.

■ When the release upon which Damascus Corporation relies is construed in the light of this record, it cannot, we think, be construed to cover or release any claims other than those covered by the demand in the letter from the receiver to Damascus Corporation dated September 7, 1945, since the claim for $71 was the only claim said receiver had against Damascus Corporation in that corporate name. The release specifically refers to the policies of insurance issued to Damascus Corporation and/or Texita Pipe Line Company, and the item of $71 is shown to have been paid as the advance deposit on policies issued in the name of Damascus Corporation.

Under above facts, we think that, taken as a whole, the release covers only the claims arising out of policies being urged at the time the release was delivered.

This view is strengthened by the fact that Damascus Corporation was indebted to Southern Underwriters for the full amount sued for in this action, under its contract with Southern Underwriters, which claims had never been paid.

■ Appellant's contention that the release of the claims sued for, if in fact it purports to release the claims, is void, must, we think, be sustained for the reason that it is undisputed in the record that Will G. Knox, as receiver, was never authorized by the court appointing him to compromise the claims of the Southern Underwriters, but that he was expressly instructed in the order appointing him receiver to demand and collect all claims due Southern Underwriters.

■ It is the established law of this State that a receiver cannot compromise the outstanding indebtedness of an estate of which he is receiver without order of the court to that effect.

Article 2297, R.C.S. 1925, provides: "The receiver shall have power, under the control of the court * * * to * * * compound for, compromise demands * * * and generally do such acts respecting the property as the court may authorize."

In the case of Hartford Accident & Indemnity Co. v. Farrell, Tex.Civ.App., 107 S.W.2d, 442, 444, it is held: "There is nothing in the order of the court which could be construed to mean that the receiver should be empowered to go to Farrell or any other person and borrow money with which to purchase liabilities of the estate represented by him, for the use and benefit of such stranger. *Even if the receiver had believed it to the best interest of the estate to borrow money and purchase or compromise outstanding indebtedness of the estate, he could not do so without an order of court to that effect. It* is said in 36 Tex. Jur. p. 169, § 79: 'And the court may authorize its receiver to borrow money or incur indebtedness when necessary for the preservation and management of the property.'" (Emphasis ours.)

In the case of Baumgarten v. Frost, 143 Tex. 533, 186 S.W.2d 982, 159 A.L.R. 428, the Supreme Court in its opinion held that a receiver appointed by a court of record must act only on the authority of the court appointing him.

In 36 Texas Jurisprudence, page 159, section 74, and authorities there cited, it is held that a receiver derives his authority from the court appointing him and that he has only such powers as the appointing court may confer upon him.

In 36 Texas Jurisprudence, pp. 160, 161, section 75, and authorities there cited, it is held that the receiver is the agent of the court appointing him, and that he is subject to the authority, decrees and orders of the court at all times and in all things pertaining to the administration of the receivership.

In 53 Corpus Juris, section 186, pp. 147, 148, it is held:

"Compromise and Settlement. Unless authorized so to do by statute or by an order of the court to which his appointment is made, a receiver has no authority to compromise claims subsisting in favor of the estate committed to his charge, or release a debtor without receiving payment of the full amount due, although where a valid compromise has been made by the insolvent prior to the receiver's appointment he may properly accept the agreed amount in settlement thereof. The court may, however, authorize or approve a compromise when it is for the best interest of the estate, as where the claim or debt is doubtful or bad, or where the recovery or collection of a judgment is doubtful, and upon a new and sufficient consideration may permit the release of debts which are neither bad nor doubtful; but to authorize the release of claims which are neither bad nor doubtful for less than the amount thereof, except on a new and sufficient consideration, would be an abuse of discretion. Ordinarily the court will not authorize or direct a compromise unless the receiver recommends it, and should not do so where the compromise would not be for the best interests of the estate."

"Subsequent Approval. The approval of the court given subsequent to a compromise is, it seems, as efficacious as if prior authority to compromise had been conferred on the receiver; but a compromise made without the prior authorization of the court is unenforceable until it has been so approved."

█ Under the above authorities it is conclusively shown that a receiver cannot compromise or settle the claims of the estate in his hands as receiver, without authority from the court appointing him, either given in advance or subsequent approval. Also it is shown that one pleading a compromise or settlement against a receiver must plead and prove the receiver's authority to make the compromise. In this instance appellee has never pleaded nor proved, nor attempted to plead or prove, that the court appointing this receiver authorized him to make settlement with appellee or that such court has approved any settlement after it is made.

While a duly appointed and acting liquidator of a concern may have the power and authority to compound doubtful debts under certain circumstances, he would not be authorized to do so after he had been appointed receiver by the court without express authority from the court appointing him.

█ Appellee contends that, under the facts in this record, the receiver is estopped from relying on his lack of authority for executing the release of the claims in question. This contention cannot, we think, be sustained.

█ The principle underlying equitable estoppel is that the party asserting it must plead or prove that he has changed his position to his damage. Love v. Barber, 17 Tex. 312; Ragsdale v. Gohlke, 36 Tex. 286; Johnson v. Black, Tex.Civ.App., 197 S.W. 2d 523.

In this case it is undisputed that appellee's liability was fixed by its contract and that it suffered no injury in paying the sum it was legally and morally obligated to pay.

In this case appellant is entitled to recover from appellee the sum sued for unless the appellee's pleas of release and estoppel can be sustained, and since under the record such pleas are, we think, without merit in law, the judgment of the trial court must be reversed and judgment here rendered that appellant recover from appellee the sum of $500 with interest at the rate of 6% per annum, and costs of suit.

Reversed and rendered.