George P. Blackburn, State's Atty., of Austin, for the State.

MORRISON, Judge.

The offense is driving while intoxicated; the punishment, 10 days in jail and a fine of $100.

Two members of the highway patrol testified that on the day in question, while on duty, they observed an automobile passing a group of automobiles without sufficient clearance, thus causing the automobiles which were meeting him to pull off on the shoulder of the highway to avoid being hit. They testified that they gave chase and were finally able to bring this automobile to a halt and observed that appellant was driving it and that he was intoxicated.

Appellant testified and admitted having drunk one bottle of beer, but denied that he was intoxicated. In this, he was supported by his witnesses. The jury accepted the State's version thereof.

Appellant presents us three bills of exception, each one containing the entire testimony, both on direct and on cross-examination, of three different witnesses, with a general objection leveled at all of such testimony.

In Cagle v. State, 180 S.W.2d 928, we cited with approval Section 211, Branch's Annotated Texas Penal Code, as follows: "A bill of exceptions is too general to be considered if it includes a number of statements some of which are clearly admissible, and there is nothing in the objections to directly challenge or single out the supposed objectional evidence."

In Clifton v. State, Tex.Cr.R., 246 S.W.2d 201, we said: "However, for the purpose of clarification, it appears that appellant is laboring under the impression that no witness may be allowed to testify as to anything he observed subsequent to the moment of arrest. In this, he is mistaken. It has long been the holding of this Court that, 'If such acts or declarations were part of the res gestae they are admissible notwithstanding the fact that they may not be admissible as confessions or as admissions, for the rule of res gestae is independent of, superior to and cannot be limited by the rules relating to confessions or admissions after arrest.' 18 Tex.Juris., Sec. 193, p. 313."

Bill of exception No. 3 seeks to complain about a question asked by the prosecutor, but the bill does not show what the question was.

Finding no reversible error, the judgment of the trial court is affirmed.

**KEERAN et al. v. SALLEY.**

No. 12336.

Court of Civil Appeals of Texas.
San Antonio.

Nov. 28, 1951.

Rehearing Denied Jan. 2, 1952.

Perkins, Floyd & Davis, Alice, for appellant.

Lon D. Herbert and Lloyd & Lloyd, all of Alice, for appellee.

NORVELL, Justice.

This is an appeal from a judgment based upon an instructed verdict. K. C. Salley, plaintiff, recovered judgment against defendant, Ralph Keeran, for the sum of $2,456.59. Salley likewise recovered judgment against the Sun Oil Company as garnishee, despite the claims of Alice Bank & Trust Company. Recovery against Salley on a cross-action asserted by Keeran was denied. Keeran and Alice Bank & Trust Company have appealed.

During the year 1950 and prior thereto Keeran was a construction contractor and Salley was a trucking and "bulldozer" contractor. On April 28, 1950, Keeran was indebted to Salley in the sum of $2,539.39, for truck, tractor and bulldozer services rendered to Keeran in his construction operations. Keeran explained to Salley at that time that he had secured a contract to remove a pipe line for the Sun Oil Company, and agreed to pay $500 on his past due account to Salley, together with an additional $750 (according to Keeran) when the job was completed, if Salley would use his heavy earth-moving machinery and aid Keeran on the contract. Salley accepted the $500 and completed his part of the work on May 2, 1950, in accordance with his agreement with Keeran. However, the day before, on May 1, 1950, Salley instituted this action against Keeran for the sum of $2,039.39 ($2,539.39 less the $500 credit) and caused a writ of garnishment to be delivered to the Sun Oil Company.

As above indicated, the first contention of Keeran as appellant is that by reason of the $500 payment to Salley and his agreement to aid Keeran in carrying out the Sun Oil Company contract, there arose an implied agreement binding Salley not to sue

upon his debt until after the contract with the Sun Oil Company had been performed. The law obviously does not undertake to enforce any and all moral obligations which might arise between individuals, and we are not here called upon to determine wherein lies the greater weight of ethics. Salley may have done better to wait another day to institute his suit. Yet, while he was waiting, Keeran may have placed the money further beyond the reach of Salley by means of letters and assignments. The question here is whether or not Salley was legally estopped or precluded from instituting suit, and this issue is controlled by well-established doctrines of law and equity. Appellant candidly concedes that he has found no Texas decision which directly supports his theory of estoppel or implied agreement not to sue. After examining the evidence referred to in the briefs, we have concluded that the trial court's action in holding against appellant upon his theories of implied contract and estoppel was correct.

■ It may be that Keeran hoped that by making a payment on his past due account and by giving Salley further work, he would escape suit, but the record does not show that Salley did anything to mislead Keeran. Bynum v. Preston, 69 Tex. 287, 6 S.W. 428; 5 Am.St.Rep. 49; Noxon v. Cockburn, Tex.Civ.App., 147 S.W.2d 872, wr.ref.; Knox v. Damascus Corp., Tex.Civ. App., 200 S.W.2d 656. Keeran seems to have fully realized that after the agreement of April 28, 1950, Salley was free to sue upon his debt at any time. Although he testified that Salley did not tell him of an intention to sue within the next few days, he (Keeran) did not rely upon Salley's giving him "further help" upon the past due account.

Keeran's contention that he was entitled to recover upon a cross-action must also be overruled because the testimony fails to show a valid agreement binding Salley to pay any sums of money whatsoever to Keeran.

Salley proposed to construct a warehouse and a gasoline filling station upon property owned by him which faced upon U. S. Highway No. 281, near Alice, Texas.

Plans and specifications were not prepared by an architect or structural engineer, but each bidder upon the project submitted his own plans and specifications along with his bid for construction. Keeran was one of the bidders. He had certain conversations with Salley, as well as representatives of the Mid-Continent Supply Company (the organization that intended to occupy the warehouse), in which the general purposes sought to be served by the buildings were discussed. Keeran made a bid upon the proposed structures in which the costs of preparing plans were included. Keeran testified that there never was a definite agreement to pay anything for the plans and specifications submitted by Keeran along with his bid. In answer to a direct question as to the matter, Keeran testified as follows:

"Q. Did Mr. Salley ever agree to pay you any money at all for any plans and specifications on this building? A. That was not discussed."

Keeran testified that after Salley sued him he supposed he would not get the contract to construct the contemplated buildings.

■ The evidence does not show either an agreement, expressed or implied, binding Salley to pay for the plans and specifications proposed by Keeran, nor is a valid basis for a claim of quantum meruit disclosed. The trial court correctly ruled out the cross-action. City of Fort Pierce v. Scofield Engineering Co., 5 Cir., 57 F.2d 1026; 12 Am.Jur. 519, §§ 23, 24.

The Alice Bank & Trust Company claims as an assignee of the account due to Keeran from the Sun Oil Company and asserts the priority of its claim over Salley's garnishment.

On the 14th day of June, 1949, Keeran executed a written instrument which was apparently intended to operate as a notice of assignment under the provisions of Article 260-1, Vernon's Ann.Civ.Stats. This notice stated that Keeran "has assigned or intends to assign one or more accounts to Alice Bank and Trust Company * * * and that this notice of assignment shall be effective from the period of

July 14, 1949, to July 14, 1952." No specific accounts or contracts are designated by the instrument. It was, however, filed among the chattel mortgage records of Jim Wells County.

Service of the writ of garnishment on the Sun Oil Company was had on May 3, 1950. The garnishee answered on May 27, 1950, that it was not indebted to Keeran when the writ was served, but that subsequent thereto it became indebted to Keeran in the amount of $2,469.24, but was informed that the Alice Bank & Trust Company was claiming said fund under an assignment and requested that said bank be impleaded.

The bank pleaded, as the evidence shows, that on May 17, 1950, it obtained from Keeran and mailed to the Sun Oil Company, a letter stating that his account in the sum of $2,409.24 had been assigned to the bank. On May 18, 1950, the bank, relying upon the assignment of the Sun Oil Company account, advanced to Keeran the sum of $2,200 and took his promissory note therefor.

Keeran had been served with citation in Salley's action on May 9, 1950. His work for the Sun Oil Company was completed on May 13, 1950, and two days later an invoice or bill for the same was mailed to the Sun Oil Company.

The filing of the notice of assignment of July 14, 1949, does not give the bank a prior right to the fund impounded by the writ of garnishment for the reason that the statute, Article 260–1, relating to assignment of accounts, defines the word "account" or "account receivable" as meaning, "an existing or future right to the payment of money *presently* due, or to become due *under an existing contract:* * * *." The contract which gave rise to the "account" here involved was obviously not in contemplation when the notice was executed.

We think the priority of claim as between Salley, the plaintiff in garnishment, and the bank which received an assignment of the disputed account or fund after the writ of garnishment was served, has been definitely settled in favor of the plaintiff in garnishment by numerous decisions of the Supreme Court. In Gause v. Cone, 73 Tex. 239, 240, 11 S.W. 162, 163, it was said that, " * * * the garnishment binds what the garnishee is indebted as well at the date of his answer as at the service of the writ. * * * the writ binds an indebtedness accruing between the service of the writ and the date of the answer. It does not change the result if the debt is not due or fully earned at the date of the service of the writ, if it shall have fully accrued at the date of the answer." See also: Tirrell v. Canada & Rice, 25 Tex. 455; Mensing v. Engelke, 67 Tex. 532, 4 S.W. 202; O'Brien v. Barcus, Tex.Com.App., 212 S.W. 941; Gallagher v. Pugh, Tex.Civ.App., 66 S.W. 118; Hall v. Nunn Electric Co., Tex.Civ.App., 214 S.W. 452; First State Bank & Trust Co. of Taylor v. Blum, Tex.Civ.App., 239 S.W. 1035; Security Nat. Bank v. Morgan, Tex.Civ.App., 245 S.W. 455; Challenge Co. v. Sartin, Tex.Civ.App., 260 S.W. 313.

None of the points of appellants, Ralph Keeran and Alice Bank & Trust Company, discloses a reversible error and the judgment of the trial court is accordingly affirmed.