CREDITORS EXCHANGE SERVICE,
INC., Plaintiff,

v.

UNITED STATES of America et al.,
Defendants.

Civ. A. No. 66–H–338.

United States District Court
S. D. Texas,
Houston Division.

Oct. 24, 1967.

Strickland, Gordon & Sheinfeld (Myron M. Sheinfeld, Houston, Tex., for plaintiff.

Morton L. Susman, U. S. Atty., Houston, Tex., for the United States.

Richard H. Cocke, Houston, Tex., and J. D. Owens, Detroit, Mich., for defendant Chrysler Credit Corp.

## MEMORANDUM

INGRAHAM, District Judge.

### I.

This is an action in interpleader instituted by the plaintiff, Creditors Exchange Service, Inc., in the District Court of Harris County, Texas, and removed to this court by the United States of America under the provisions of 28 U.S.C. § 1442(a) (1). The principal question involved is that of determining the relative priorities between a federal tax lien and a perfected security interest under assignments of accounts receivable and trust receipt financing.

The facts show that on March 18, 1965, Art Grindle OST Chrysler-Plymouth, Inc. (hereinafter called Grindle) by its president executed to Chrysler Credit Corporation an assignment of "all notes and trade accounts receivable". Notice of assignment of accounts receivable was filed on March 23, 1965, in the office of the Harris County Clerk as required by Art. 260–1, Sec. 4 (Vernon's Ann.Tex.Civ.St. 1959). The assignment stated that it was security for a loan of the same date in the amount of $50,000 and for "any other indebtedness now or hereafter owing * * *" Grindle repaid the $50,000 loan in full, but is indebted to Chrysler Credit Corporation to the extent of $92,242.79 as a result of other transactions. On March 2, 1966, Grindle made an assignment for the benefit of its creditors, appointing Creditors Exchange Service, Inc. as its trustee. In liquidation of Grindle's assets, $15,102.-79 was collected. Of the amount collected, Chrysler Credit claims $4,348.40, while the United States claims the entire amount by virtue of an assessment made on April 8, 1966, against Grindle in the amount of $17,401.05 for income taxes owing. Notice of a federal tax lien was filed with the Harris County Clerk on April 15, 1966.

On December 7, 1964, Westheimer Dodge (hereinafter called Westheimer), by its president, Arthur E. Grindle, executed to Chrysler Credit Corporation an assignment of "all accounts receivable now owned or which may hereafter be acquired". The assignment stated that it was security for a loan of the same date in the amount of $100,000 and for "any other indebtedness now or hereafter owing". On the same date Westheimer also assigned to Chrysler Credit "all credits which are now or may hereafter become due" to Westheimer from Chrysler Motors Corporation. This latter assignment was made in contemplation of reduction of the Excise Tax which was subsequently enacted on June 21, 1965, P.L. 89–44, 79 Stat. 136. On December 8, 1964, a notice that Westheimer has assigned or intends to assign to Chrysler Credit one or more accounts receivable was filed with the Harris County Clerk in conformity with Art. 260–1, Sec. 4 (V.A.T.S. 1959). The $100,000 loan has been reduced to $1,957.58, but Westheimer is indebted to Chrysler Credit in the amount of $89,877.63 arising from other transactions.

In connection with a "floorplanning" agreement, a statement was filed on December 10, 1965, with the Texas Secretary of State to the effect that Chrysler Credit expects to be engaged in trust receipt financing of new and used motor vehicles with Westheimer. Filing was under the provisions of Art. 5499a–51 (V.A.T.S. 1966). On January 25, 1966, Westheimer executed a promissory note secured by a trust receipt in favor of Chrysler Credit in the amount of $1,709.-86, covering a Dodge truck. On February 8, 1966, Westheimer executed a promissory note secured by a trust receipt in

the amount of $1,894.52, covering another Dodge truck. The trucks were sold by Westheimer for $1,171.50 and $1,917.-72, respectively, and the proceeds were collected by Creditors Exchange and are part of the funds interpleaded in this action.

Westheimer executed an assignment for the benefit of its creditors on March 16, 1966, and Creditors Exchange was appointed trustee. Creditors Exchange liquidated the assets of Westheimer and has interpleaded in this action $24,-513.26. On the basis of the various transactions noted above, Chrysler Credit is claiming a total of $10,056.63. The United States is claiming the entire amount paid into the court on Westheimer's account by virtue of assessments made on April 8 and June 2, 1966, for unpaid federal income taxes totaling $217,265.33, plus interest. With respect to $53,306.58 of the unpaid taxes, notice of a federal tax lien was filed with the Harris County Clerk on April 15, 1966.

The court finds that Chrysler Credit had possession of both Grindle's and Westheimer's accounts receivable books prior to the time either made an assignment for the benefit of creditors and that Creditors Exchange never had possession of the original entry ledgers or books of accounts receivable. On the basis of uncontradicted evidence, the court finds that a few days after making their respective assignments for the benefit of creditors, both Grindle and Westheimer instructed the Post Office to forward all of their mail to Creditors Exchange. As a result, Creditors Exchange received checks payable to Grindle or Westheimer, the proceeds of which are part of the funds interpleaded in this action. Finally, the evidence shows that Chrysler Credit demanded an accounting of all collections made by Creditors Exchange in a letter received by the latter on March 28, 1966. Moreover, in its Answer filed on June 6, 1966, Chrysler Credit specifically demanded an accounting for the sale proceeds of the two trucks under trust receipts.

## II.

The first question which must be resolved by the court is whether Chrysler Credit had a perfected lien on the accounts receivable of Grindle and Westheimer prior to the time they made their respective assignments for the benefit of creditors on March 2 and March 16, 1966. This is a question of state law. Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239 (1930). The United States contends that the assignments of accounts in question are defective because they do not describe the accounts assigned with sufficient particularity to identify the same as required by Art. 260-1, Sec. 2 (V.A.T.S. 1959). The assignments of accounts receivable were in terms of "all the notes and trade accounts receivable now owned or which hereafter may be acquired * * * together with all monies due or to become due thereon". The court holds that the description used was sufficiently particular since it gives ample notice of what was assigned. Seligmann v. Hill & Combs, 338 S.W.2d 178 (Tex.Civ.App. 1960), relied on by the United States, is not controlling because in that case the assignment was of "current accounts receivable". Compare Keeran v. Salley, 244 S.W.2d 663 (Tex.Civ.App., San Antonio, 1951, writ ref'd).

The United States also contends that the Notice of the assignment of accounts receivable was ineffective because the assignments secured an indebtedness other than that referred to in the Notice. Neither Sec. 3 of Art. 260-1 (V.A.T.S. 1959) nor the cases construing it require that the Notice recite the debt secured and for this reason the government's contention is rejected. Moreover, both assignments of accounts receivable specifically provide that they are security for the named promissory note and for "any other indebtedness now or hereafter owing * * *" Abramson v. Boedeker, 379 F.2d 741 (5 CA 1967), cited by the United States, concerns an unrecorded assignment and is not in point.

It is the court's opinion that under the law of Texas, Chrysler Credit had a

perfected lien on the accounts receivable of Grindle and Westheimer prior to the time either made an assignment for the benefit of creditors.

### III.

■ Having determined that Chrysler Credit had a perfected lien on the accounts receiveable, the next question is whether the claims of the United States must nevertheless be given priority on the basis of Section 3466 (31 U.S.C. Section 191). This section provides, in substance, that "whenever any person indebted to the United States is insolvent, * * * the debts due to the United States shall be first satisfied; * * * " Taxes due the United States are "debts" within the meaning of Section 3466. Price v. United States, 269 U.S. 492, 46 S.Ct. 180, 70 L.Ed. 373 (1926). Further, it is stipulated that both Westheimer and Grindle are insolvent.

■ While the priority accorded by Section 3466 appears absolute on its face, the Supreme Court has held in cases involving state liens for unpaid taxes that such liens are exempt from Section 3466 provided that they are choate. United States v. State of Vermont, 377 U.S. 351, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964). Assuming that the requirement of choateness applies to private lienors, the court must determine as a preliminary matter whether Chrysler Credit's lien is choate. In order for a lien to be choate, three requirements must be satisfied: (1) the identity of the lienor must be ascertained; (2) the amount of the lien must be fixed; and (3) the property to which the lien attaches must be reduced to the possession of the lienor. United States v. State of Vermont, 377 U.S. 351, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964); United States v. Gilbert Associates, Inc., 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071 (1953); State of Illinois, ex rel. Gordon v. Campbell, 329 U.S. 362, 67 S.Ct. 340, 91 L.Ed. 348 (1946).

The United States contends that Chrysler Credit's lien on the accounts receivable and the factory credits was inchoate be- cause Chrysler Credit did not obtain possession of the specific accounts and credits involved. The government argues that the seizure by Chrysler Credit of the taxpayers' books of accounts receivable did not constitute possession since Creditors Exchange was subsequently able to obtain possession of the payments made on such accounts by having the taxpayers' mail directed to it.

The government's contention is rejected because the assignments of accounts receivable gave Chrysler Credit the right "to receive, collect, sue for, compromise and receipt the payment for all monies due or to become due; * * " Thus, under the provisions of the recorded assignments, Creditors Exchange had no right to collect payments on the accounts and the fact that the taxpayers' mail was directed to it did not prejudice the preexisting superior rights of Chrysler Credit.

Moreover, in bankruptcy cases involving a claim of summary jurisdiction, the courts have held that where, as here, the assignee of an account receivable has given notice to the account debtors of the assignment and has initiated collection of the accounts, then the assignee is deemed to be the possessor of the assigned accounts. Schwartz v. Horowitz, 131 F.2d 506 (2 CA 1942).

Finally, in In re I. Greenbaum & Sons Co., Inc., 6 F.Supp. 245 (S.D.N.Y.1933), the court held that where ledger sheets were deposited with the assignee of accounts receivable, he would be deemed to be in possession of the accounts.

■ For the above reasons, it is the finding of the court that Chrysler Credit's lien was choate.

The court must now decide whether a perfected and choate lien constitutes an exception to the priority afforded to the United States under Section 3466. While the Suprem Court has expressly reserved decision on this question, State of Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 67 S.Ct. 340, 91 L.Ed. 348 (1946), the Fifth Circuit has held that a perfected and choate lien defeats the federal prior-

ity. Exchange Bank & Trust Co. v. Tubbs Manufacturing Co., 246 F.2d 141 (5 CA 1957), cert. den., City of Dallas, Tex. v. Tubbs Mfg. Co., 355 U.S. 868, 78 S.Ct. 118, 2 L.Ed.2d 75 (1957); United States v. Atlantic Municipal Corp., 212 F.2d 709 (5 CA 1954). The theory of these cases is that to the extent that the taxpayer has alienated a property interest, that property interest is no longer his and cannot be made subject to a subsequent lien for taxes owed by him. In the instant case, the taxpayers have alienated their interests in the accounts receivable by means of the assignments and a lien for unpaid taxes cannot attach to the proceeds collected on the accounts. United States v. Lebanon Woolen Mills Corp., 241 F.Supp. 393 (D.C.N.H.1964). See also United States v. Lester, 235 F.Supp. 115 (S.D.N.Y.1964). Accordingly, the court holds that Chrysler Credit's prior perfected lien on the accounts receivable takes priority over the subsequent attaching federal tax lien.

### IV.

The final question before the court is whether Chrysler Credit's lien on the proceeds from the sale of the two vehicles under trust receipts was choate and, if so, whether Chrysler Credit waived its right to demand an accounting.

Turning to the question of choateness, under the terms of the trust receipts, Westheimer had possession of the vehicles with the right to sell them and remit the proceeds to Chrysler Credit. The government contends that Chrysler Credit's lien was inchoate at the time of the assignment for the benefit of creditors because the amount of the proceeds from the sale of the vehicles was not certain. This contention must be rejected in view of the government's concession in Crest Finance Co. v. United States, 368 U.S. 347, 82 S.Ct. 384, 7 L.Ed.2d 342 (1961), that a lien is not rendered inchoate because the amount to be derived from a sale is not immediately ascertainable. See also Corigliano v. Catla Construction Co., 231 F.Supp. 245 (S.D.N.Y.1964).

Section 10(c) of Article 5499a–51 (V.A.T.S.1966) provides that the entruster waives his right to an accounting by failure to demand such within ten days after knowledge of the existence of proceeds is acquired. The government's contention that Chrysler Credit waived its right to an accounting is rejected on the basis of the court's finding that Chrysler Credit demanded an accounting on March 28 and June 6, 1966. See, supra, pages ——. Both of these demands were made long before September, 1966, the date on which Chrysler Credit first learned of the existence of the proceeds in question.

In summary, the court holds that Chrysler Credit's lien under the trust receipts was choate and perfected by filing and that, for the reasons given in the discussion of the lien on the accounts receivable, it takes priority over the subsequent attaching federal tax lien.

### V.

It has been stipulated by the parties that Creditors Exchange is to be paid the sum of $309 from the funds in the Registry of the Court. It has also been stipulated that Creditors Exchange is to receive as its attorney's fees the sum of $2,000 from any money recovered by Chrysler Credit. A judgment will be entered in favor of Creditors Exchange for these amounts. In accord with the reasons heretofore given, the court finds that Chrysler Credit has priority to the extent of *$4,348.40* in the $15,102.79 paid into the court for the account of Grindle. The court further finds that Chrysler Credit has priority to the extent of *$10,056.63* in the $24,513.26 deposited in the Registry of the Court for the account of Westheimer. Included in the $10,056.63 is the sum of $420 derived from the sale of the Reed automobile which all parties concede is subject to Chrysler Credit's priority. Judgment will therefore be entered in favor of Chrysler Credit for the sum of $14,405.03 minus the $2,000 due Creditors Exchange as its attorney's fees.

The clerk will notify counsel to draft and submit an appropriate judgment. Counsel should also draft a transmittal order authorizing the removal of the $37,264.39 still on deposit in the District Court of Harris County to the Registry of this Court.