FILLEY ENTERPRISES, INC., Petitioner,

v.

YOUNGSTOWN SHEET & TUBE COMPANY, Respondent.

No. B–1339.

Supreme Court of Texas.

May 21, 1969.

Stubbeman, McRae, Sealy & Laughlin, F. H. Pannill, Midland, for petitioner.

Roach & Robertson, Glen Adams, Dallas, for respondent.

CALVERT, Chief Justice.

This suit originated as a garnishment proceeding by Youngstown Sheet & Tube Company, respondent, against Vaughn Petroleum Co., garnishee, and ancillary to a suit for debt by Youngstown against G. B. Burris, doing business as Burris Drilling Co. Vaughn answered, admitting that it possessed funds owing to Burris but asserting that it had been presented with numerous claims. Vaughn interpleaded the various claimants and tendered the funds, $15,310.46, into the registry of the court. After several pretrial dismissal orders, including one as to Vaughn, the case stood in its present posture. Only petitioner, Filley Enterprises, an interpleaded defendant claiming a superior right to the funds by virtue of an assignment of accounts receivable, and Youngstown, claiming under the writ of garnishment, remained in the case. The trial court, without a jury, rendered judgment that Youngstown take the entire amount of the impounded fund and that Filley take nothing. The court of civil appeals affirmed. 435 S.W.2d 602. We reverse the judgments of the courts below and render judgment for Filley.

Burris and Filley executed an instrument labeled "Agreement and Assignment of Accounts Receivable" on March 31, 1965. In this instrument, Burris assigned to Filley, for consideration, "all and each of the accounts receivable set out, described or referred to in the Schedule of Assigned Accounts Receivable * * * attached hereto," and also "all and each of such other

accounts receivable as shall hereafter, from time to time, be submitted by Assignor to and accepted by Filley, as shall be set out, described or referred to in one or more schedules and attached to this Agreement and made a part hereof, it being now contemplated that additional transactions of similar and related nature may be consummated between Assignor and Filley in the future." The record does not reflect whether a schedule of accounts receivable was attached to this instrument at the time of its execution. However, the record does show that a "Schedule 12" was attached on June 25, 1965, and a "Schedule 14" was attached on July 9, 1965. These schedules were assignments of specific accounts receivable executed by Burris and accepted by Filley. Schedule 12 included an account receivable from Vaughn to Burris in the amount of $8,325.00, and Schedule 14 consisted solely of an account receivable from Vaughn to Burris in the amount of $6,-985.46. Youngstown's writ of garnishment was served on Vaughn on July 7, 1965, two days before the execution of Schedule 14 but several days after the execution of Schedule 12.

Article 260-1,[1] Vernon's Texas Civil Statutes, provides in Section 2 that:

"The assignment of any existing or future account or accounts may be protected by the execution and delivery by the assignor to the assignee of an instrument or instruments in writing, assigning such account or accounts and describing the account or accounts assigned with sufficient particularity to identify the same, and by the filing for record the 'Notice of Assignment' as hereinafter provided for."

Filley duly filed a notice of assignment on April 30, 1965 in the office of the County Clerk of Midland County. This instrument is in the record and it complies in all respects with the requirements set out in Section 3 of Article 260-1. Thus, the relevant dates can be summarized as follows:

March 31, 1965—Burris and Filley executed assignment agreement.

April 30, 1965—Filley duly filed notice of assignment.

June 25, 1965—Schedule 12 was executed, assigning a Vaughn account to Filley in the amount of $8,325.00.

July 7, 1965—Youngstown caused a writ of garnishment to be served on Vaughn.

July 9, 1965—Schedule 14 was executed, assigning a Vaughn account to Filley in the amount of $6,905.46.

The court of civil appeals resolved the question of priority between Filley's assignment and Youngstown's lien in favor of Youngstown by relying solely on Keeran v. Salley, 244 S.W.2d 663 (Tex.Civ.App.—San Antonio, 1951, writ ref'd). As in the case at bar, the assignee there filed a notice of assignment which recited that the assignor had assigned or intended to assign one or more accounts to the assignee, and that such notice would be effective for a three-year period. Nearly a year later, a writ of garnishment was served on one of the assignor's debtors. Shortly thereafter, the assignor mailed an assignment of this same debtor's account to the assignee. As between the garnishor and the assignee, the court held that the garnishor had the prior right to the indebtedness. The court held that Article 260-1 only protected a present or future right to "money presently due or to become due *under an existing contract*."[2] 244 S.W.2d 663, at 666. Since both the ac-

---

1. This article was repealed in 1965 and replaced by several provisions of the Uniform Commercial Code, Acts 1965, 59th Leg., vol. 2, ch. 721, page 1, which in turn was later re-enacted and placed in the Business and Commerce Code, Acts 1967, 60th Leg., vol. 2, ch. 785, page 2343. However, since all events material to this case occurred before June 30, 1966, the effective date of the Uniform Commercial Code, Art. 260-1 is the applicable law.

2. Emphasis ours throughout.

count assigned and the contract creating the account were non-existent at the time of the execution of the agreement to assign, and since the writ of garnishment was served before the letter assigning the account, the court held that the garnishor had a prior right to the impounded fund.

The court of civil appeals in this case, paraphrasing the language in *Keeran*, held that the filing of the notice of assignment on April 30, 1965 could only protect assignments of accounts presently due or to become due *under an existing contract*. Because it is stipulated that the contract between Burris and Vaughn did not exist until after that date, the court held that the assignment was unprotected. We disagree. By our notation "refused" on the application for writ of error in *Keeran*, we approved the principles of law declared in the opinion by the court of civil appeals. Rule 483, Texas Rules of Civil Procedure. However, the Legislature amended Article 260–1 in 1955, in what appears to have been a direct attempt to alter the effect of the statute as required by *Keeran*. While we adhere to our view that *Keeran* correctly interpreted Article 260–1 as it read in 1951, we are now faced with an entirely new problem.

▮▮▮ The definition of "account or account receivable" in Section 1 was amended to read (with the language added by the amendment emphasized):

" * * * an existing or future right to the payment of money presently due, or to become due (a) under an existing contract *or under a future contract entered into during the effective period of the notice of assignment hereinafter provided for * * *.*"

Section 2, set out previously, provides that an assignment of an "existing *or future* account or accounts" can be protected. The words "existing or future" were added by the amendment. Section 3 provides that a notice of assignment will be effective for the time specified up to three years. We can conceive of no other reasonable inter-

pretation but that the Legislature intended by the amendments to provide for protection of future accounts receivable due under future contracts even if they were not in existence or contemplated at the time of the original agreement to assign. If further evidence of the intention be needed, it may be found in the language added to Section 4 by the amendment:

" * * * and such notice shall protect the assignment of accounts which arise during such effective period and which originate out of existing or future contracts, and are assigned by assignor to assignee at any time during such three (3) year period, regardless of whether such account was in the contemplation of the assignor and assignee when such notice was executed."

This language appears to be a direct reply to the statement in *Keeran* that "the contract which gave rise to the 'account' here involved was obviously not in contemplation when the notice was executed." 244 S.W.2d 663, at 666. We hold, consistent with the clear language of the amended article, that an assignment of accounts receivable, together with a filing in proper form of the notice of assignment, is effective to protect not only assignments of existing accounts but also of future accounts which arise out of future contracts if the subsequent assignments are within the effective period of the notice of assignment. It is undisputed that a contract existed between Burris and Vaughn which gave rise to the assigned account. This was all accomplished during the effective period of the notice of assignment and we can see no reason why the language of the amendment would not protect such an assignment.

▮▮▮ Respondent argues that Article 260–1 only affords protection to the assignee from the date of delivery by the assignor to the assignee of an assignment in writing describing the account with sufficient particularity to identify it. This description, of course, could only be furnished after the account came into existence. Section 2

does require that an instrument be delivered to the assignee with a sufficient description of the account. However, to conform with the entire article, this provision can only mean that, if and when an account comes into existence, it must be assigned by delivering an instrument in writing describing the account sufficiently to identify it. It cannot mean, as respondent urges, that the rights of the assignee date from the day of such delivery. To place this interpretation on the article would not only nullify the amendment provisions for assignments of future accounts but would also squarely contradict the language of Section 6:

"Sec. 6. Whenever any person, firm or corporation shall in good faith take a protected assignment of any account or accounts, which shall not have been satisfied, cancelled or released by the assignor, *all creditors of*, and all subsequent assignees, purchasers and transferees of or from *the assignor shall be conclusively deemed to have received notice of such assignment, dating from the time of the filing for record of the notice of assignment* hereinabove provided; *and after such filing for record*, no purchaser from the assignor, *no creditor of any kind of the assignor*, and no prior or subsequent assignee or transferee of the assignor, holding an assignment not protected, or holding an assignment under a notice of assignment subsequently filed for record, *shall in any event have, or be deemed to have acquired, any right in the account or accounts so assigned or in the proceeds thereof*, or in any obligation substituted therefor, *superior to the rights therein of the assignee named in such prior protected assignment*."

No reason has been advanced, and we can conceive of none, why the language of Article 260–1 should not be given its obvious meaning and natural import. The amended article clearly provides a vehicle for protecting assignments of future accounts from the date of filing the notice of assignment. Our office is not to pass on the wisdom of the Legislature's policy decisions; but rather, once it is held that its enactments are valid, it is our duty to enforce them as written.

Respondent finally contends that the accounts assigned were not described with sufficient particularity to identify them. Schedule 12 lists the date of the invoice, the name of the obligor of the account as "Vaughn Petroleum, Co.," and the net amount of the account. Schedule 14 is identical with 12, but adds "Terry #1, Crane County, Texas" to the description. Respondent relies on Seligmann v. Hill & Combs, 338 S.W.2d 178 (Tex.Civ.App.— San Antonio, 1960, writ ref'd n. r. e.), for the proposition that an assignment under Article 260–1 must identify the creditor, the debtor, the amount due, the job on which the work was done, the name of the contractor, his street address, the date of the invoice and its number. Respondent misreads *Seligmann*. In the first place, the court was not even referring to an Article 260–1 assignment, having held that the article did not apply to this particular assignment. Secondly, the court merely held that the above data was sufficient to identify the account. The court did not undertake to establish a set of requirements. Respondent also cites Transamerica Insurance Co. v. Texas Warrant Co., 405 S.W.2d 66 (Tex. Civ.App.—Austin, 1966, writ ref'd n. r. e.). As in *Seligmann*, the court only held that the description involved was sufficient to identify the account.

We are of the opinion that the description of the Vaughn account was sufficient to identify it. Article 260–1 demands only that the account be identifiable and respondent does not suggest why the account could not be identified by the description supplied. In Creditors Exchange Service, Inc. v. United States, 277 F.Supp. 885 (S.D. Tex., 1967), a United States District Court recently held that an assignment under Article 260–1 that described the accounts as "all the notes and trade accounts receivable now owned or which hereafter may be acquired * * * together with all monies

**514**

due or to become due thereon," was sufficient identification.

We reverse the judgments of the courts below and render judgment here that petitioner, Filley Enterprises, recover the entire fund impounded in the registry of the court.