**GLOBE INDEMNITY CO. v. WEST TEXAS LUMBER CO. et al.**

No. 7521.

Court of Civil Appeals of Texas. Austin.

Dec. 3, 1930.

Rehearing Denied Dec. 23, 1930.

Thompson, Knight, Baker & Harris, of Dallas, for appellant Globe Indemnity Co.

Collins, Jackson & Snodgrass, of San Angelo, for appellees L. B. Cox & Co.

BLAIR, J.

By a mechanic's lien contract, dated February 8, 1928, L. B. Cox & Co., a copartnership, as owner, contracted with J. W. Fuqua, as contractor, to construct a business house on its certain lots in San Angelo, Tom Green county, Tex., for a consideration of $24,155, to be paid when the building was completed. The contractor agreed to furnish all labor and material used in the building, and his bond with the Globe Indemnity Company as surety, hereinafter called surety, provided for the faithful performance of the contract, and for the payment of all labor and material used in the building, and expressly provided that laborers and materialmen had the right of action on the bond. The contractor's application for this bond, dated January 22, 1928, contained a conditional assignment and subrogation agreement to surety in consideration of executing the bond of all moneys due or to become due the contractor under the contract, and of all liens securing same, conditioned to become effective only upon some breach of the contract by contractor. This assignment was not acknowledged; nor was it filed or recorded in the mechanic's lien records of Tom Green county, Tex., where the property was located. About March 1, 1928, Fuqua found that he could not finance the building contract, and entered into an agreement with Cox & Co. and the Central National Bank of San Angelo, hereinafter called bank, whereby Cox & Co., at Fuqua's instance and request, agreed and promised to pay the bank upon completion of the building by Fuqua, any loans the bank made him up to the amount of the contract price of the building; and, as additional security to this obligation of Cox & Co. and Fuqua, the bank acquired from Fuqua a written assignment of the contract price of the building, or so much thereof as might be necessary to cover loans made to Fuqua, and also an assignment of the mechanic's lien securing the contract price of the building, and to all of which Cox & Co. verbally assented and agreed. This transfer or assignment was duly acknowledged and delivered to the bank on March 3, 1928, and was on the same day filed for record, and was on March 9, 1928, duly recorded in the mechanic's lien records of Tom Green county. Under this agreement the bank loaned Fuqua on his fourteen notes, dated from March 3, 1928, to June 15, 1928, the sum of $14,005.14,

including interest. Cox & Co. accepted and took possession of the building on July 1, 1928, under agreement with Fuqua that he would remedy certain defects and deficiencies in the building. On September 19, 1928, upon demand of the bank and under agreement made, Cox & Co. repaid the bank the $14,005.14 represented by Fuqua's notes; and on the same date the bank indorsed Fuqua's notes thus paid to Cox & Co., without recourse, and delivered them to Cox & Co. Neither Cox & Co. nor the bank had any notice of the prior assignment by Fuqua to the surety until after the loans to Fuqua had been made by the bank and paid by Cox & Co. under the agreement. By agreement of counsel, the $10,149.51 balance due on the contract price of the building was distributed to laborers and materialmen who furnished the contractor labor and (or) material in the building, and who are plaintiffs and interveners in this suit, all of whom had complied with the requirements with respect to fixing their statutory liens upon the property involved, to the extent of this unpaid balance of the contract price in the hands of the owner.

At the conclusion of the evidence the trial court withdrew the case from the jury, and under the preceding facts rendered judgments aggregating $4,850.67 against J. W. Fuqua and Globe Indemnity Company, as surety on his bond, in favor of plaintiff and interveners for the unpaid balance· of their respective claims for labor and (or) material furnished the contractor in the construction of the building; and judgment was rendered for surety over against J. W. Fuqua in the event it was compelled to pay the judgments in favor of plaintiffs and interveners. The surety was denied a judgment for a sufficient amount to pay the claims of plaintiff and interveners, for whose benefit as well as its own benefit surety sued, on its cross-action and plea against the bank that its assignment was prior in point of time to the bank's assignment, and that the bank was therefore guilty of conversion of the funds paid to it by Cox & Co. on Fuqua's loans under their agreement; and likewise surety was denied· judgment against Cox & Co. on its cross-action and plea that Cox & Co. had wrongfully paid the money due on the contract to the bank under their agreement, after notice of its assignment; hence this appeal by surety.

We do not sustain surety's contention that its assignment should be given priority over the bank's assignment, under the rule stated in Hess & Skinner v. Turney, 110 Tex. 148, 216 S. W. 621, that successive "equitable assignments have priority according to the date of their creation or execution," because surety's assignment was invalid as between the owner, the bank, and surety for the following reasons:

■■ 1. The assignment was a part of the contractor's application for his bond, which was dated January 22, 1928, and contained the following stipulation: "This assignment shall be in full force and effect, as of the date hereof, should the undersigned fail, refuse or be unable to complete the said work in accordance with the terms of the contract covered by said bond, or in event of any default on the part of the undersigned under the said contract."

The application further stipulated that the contractor "does hereby assign, transfer and convey to said Company all the deferred payments, and retained percentages, and any and all moneys and properties that may be due and payable at the time of such breach or default, or that may thereafter become due and payable to said undersigned on account of said contract."

The building contract was not executed until February 8, 1928. Future earnings or profits under a contract not yet made have no potential existence, and any attempt to assign them is void. Johnson v. Amarillo Imp. Co., 88 Tex. 505, 31 S. W. 503; First Nat. Bank v. Campbell (Tex. Civ. App.) 19.? S. W. 197; Campbell v. Grant, 36 Tex. Civ. App. 641, 82 S. W. 794. But, if we are mistaken in the conclusion that surety's assignment should be given the date of the application for the bond, which date the parties clearly intended to give to it by the preceding stipulations; and if instead it should be given the date of the bond or the contract which the bond secured, still it was merely a conditional assignment, conditioned upon some future breach of the contract by the contractor, and its effective date was postponed until the happening of the event which would make it absolute, and which event the bond specifically guaranteed would not happen. This left the contractor free to assign the contract price of the building and the lien securing same to any person he might see fit, and such assignment, whether legal or equitable, before the happening of the event which would make surety's assignment absolute, should be given priority, under the rule that it was in fact first created or executed.

■■■ In this connection, it is also settled law that the rule "first in time is first in right," as between successive assignees of a chose in action, does not apply to the debtor. He is not affected by the assignment until notified of it, and may, prior to notice of it, settle with the original creditor or his assignees, and cannot be made to pay more than the amount of his contract obligation. Burnham v. Chandler, 15 Tex. 441; Gollnick v. Fry (Tex. Com. App.) 23 S.W.(2d) 677; Garvin v. Armstrong (Tex. Civ. App.) 20 S.W.(2d) 358; 5 Tex. Jur., 28, § 22. There is no dispute that the owner accepted and

agreed to Fuqua's assignment to the bank before notice of surety's assignment, and obligated itself to pay out of the money due Fuqua on the building contract such loans as the bank made to him, which contract price was represented by the owner to be and was on deposit in a bank at Ozona, Tex., at the time the agreement was made. This agreement effectively bound the owner and appropriated at the time of the agreement such an amount of the contract price as was necessary to pay the bank for any .oans it made to Fuqua.

Nor was the agreement of the owner to pay the bank out of the contract price of the building the amount of Fuqua's loans affected by subsequent notice of surety's assignment, if it had such notice, before the payment of these loans, under the general rule that "after notice of an assignment the debtor deals with the assignor at his peril." This broad general rule does not apply to executory building contracts where the contract price is to be paid upon completion of the building, and where the contractor makes representations to the owner that he will be unable to continue the work unless the owner advances money with which to pay for labor and material going into the building, or agrees to pay the bank such an amount out of the contract price as the bank might loan him; that the owner agreed to these requests and accepted an assignment to the bank by contractor of the contract price of the building and the lien securing same.

In the case of Peden Iron & Steel Co. v. McKnight, 60 Tex. Civ. App. 45, 128 S. W. 156, 159, Judge Key writing the opinion, held, under analogous facts to those alleged and proved in this case, that the owner had the right, both in law and equity, to make such advances, although he had notice of a previous assignment of the contract price of the building, and clearly stated the true rule in such cases to be, as follows: "It is true that some authorities express the rule to the effect that, after notice of the assignment, the debtor deals with the assignor at his peril, and can do nothing that will adversely affect the interest of the assignee. If intended to apply to all cases and to admit of no exceptions, that statement of the rule is too broad. It should be qualified by the statement that, when the existence of the assigned fund is dependent upon performance by the assignor of an executory contract, the anticipatory debtor may, at any time, do whatever reasonably appears to be necessary to enable the assignor to perform the contract."

This rule is especially applicable to the facts of this case. Surety did not obtain an assignment of the contract, or any active interest in its execution, but an assignment of the contract price of the building, conditioned to become effective only upon the breach of some provisions of the contract by the contractor. This left the contractor and owner free to make any settlement of the contract price of the building agreeable to themselves and made in good faith. They did make a settlement by agreeing for the owner to pay the amount due the contractor under the contract to the bank, which agreed, for the mutual benefit of both the owner and contractor, to advance the money to pay for the labor and material going into the building. The bank also obtained not only an equitable but a legal assignment of the contract price of the building and the lien securing same, before any breach of the condition, failure to pay laborers and material by the contractor, which was necessary to make surety's assignment absolute, and which condition surety undertook by its bond to guarantee on the part of the contractor.

2. The assignment was also invalid for want of the architect's consent thereto as required under the following provisions of the building contract: "The contractor shall not let, assign, or transfer this contract, or any interest therein, without the written consent of the architects."

This provision of the contract was pleaded as a defense to surety's assignment, and the proof showed that the architects not only did not consent to the assignment, but knew nothing of it until this suit was filed; nor did the owner in any manner consent to or accept this assignment. This provision of the contract was for the sole benefit of the owner, and the attempted transfer merely created a personal obligation which can only be enforced against the assignor. Missouri, K. & T. Ry. Co. v. Carter, 95 Tex. 479, 68 S. W. 159; King v. Hardin Lumber Co. (Tex. Civ. App.) 187 S. W. 401; 5 C. J. 874.

3. But if under any construction surety's assignment could be held to have been created or executed prior to the bank's assignment, still it cannot be given priority, because surety failed to comply with the registration statute, and, as between them, its assignment is void. This statute renders void all instruments affecting title of or concerning real estate "as to all creditors and subsequent purchasers for a valuable consideration without notice," unless such instruments are properly acknowledged, filed, and recorded in the county where the real estate is situated. Article 6627, R. S. 1925. This statute has been held to apply to mechanic's and materialmen's liens. Bernstein v. Hibbs (Tex. Civ. App.) 284 S. W. 234; Scottish-American Mortgage Co. v. Scripture (Tex. Civ. App.) 40 S. W. 210; Heidenheimer v. Stewart, 65 Tex. 321; Graves v. Kinney, 95 Tex. 214, 66 S. W. 293; Spencer v. Jones, 92 Tex. 519, 50 S. W. 118, 71 Am. St. Rep. 870; Fennimore v. Ingham (Tex. Civ. App.) 181 S. W. 513; King v. Bank, 30 Tex. Civ. App. 92, 69 S. W. 978; Drumm Commission

Co. v. Gore, 47 Tex. Civ. App. 216, 105 S. W. 843; Busch v. Broun (Tex. Civ. App.) 152 S. W. 683; Thomas v. Bank, 60 Tex. Civ. App. 133, 127 S. W. 844; Garvin v. Armstrorg Bros., supra. The evidence is conclusive that the bank purchased $14,005.14 of the contract price of the building and the lien securing same, as an innocent purchaser for value without notice of surety's assignment, which was not acknowledged, filed, or recorded as required by the statute. Because of surety's failure to comply with the registration statute, the bank, as subsequent purchaser for value without notice of surety's assignment, may invoke the equitable doctrine announced in the case of Moran v. Wheeler, 87 Tex. 179, 27 S. W. 54, which in substance, declares that, as between "innocent purchasers of a lien affecting the title to land," the one purchasing first and failing to comply with the registration statute must suffer the loss occasioned by his negligence rather than the subsequent purchaser without notice, and who made no such default. King v. Bank, 30 Tex. Civ. App. 92, 69 S. W. 978; Drumm Commission Co. v. Gore, 47 Tex. Civ. App. 216, 105 S. W. 843; Rogers v. Houston, 94 Tex. 403, 60 S. W. 869; Gamble v. Martin (Tex. Civ. App.) 151 S. W. 327; Barnes v. Jamison, 24 Tex. 362; Baldwin v. Root, 90 Tex. 552, 40 S. W. 3; Spencer v. Jones, 92 Tex. 519, 50 S. W. 118, 71 Am. St. Rep. 870; Fennimore v. Ingham (Tex. Civ. App.) 181 S. W. 513; Busch v. Broun (Tex. Civ. App.) 152 S. W. 683; Thomas v. Bank, 60 Tex. Civ. App. 133, 127 S. W. 844.

▮ Nor do we sustain surety's contention that it was entitled to recover over against Cox & Co. the amount of the respective judgments rendered against it in favor of subcontractors, laborers, and materialmen, together with the subrogation of their liens. Surety's bond provided that "this bond is made for the use of all persons and corporations who may furnish labor or material on the hereinbefore mentioned contract, and may be sued on by them or either or any of them as if they and each of them were specifically named as the obligees herein."

The bond therefore fixed surety's liability to the subcontractors, laborers, and materialmen, and relieved the premises of Cox & Co. of their liens. Texas Glass & Paint Co. v. Crowdus, 108 Tex. 346, 193 S. W. 1072; Foust v. Bibb (Tex. Civ. App.) 258 S. W. 921, which changed its name in the Supreme Court and was denominated American Surety Co. v. Foust (Tex. Com. App.) 272 S. W. 445; Atkinson v. Jackson Bros. (Tex. Civ. App.) 259 S. W. 280.

▮ Nor do we sustain the surety's contention that the court should have limited the amount which Cox & Co. paid the bank on Fuqua's loans to the aggregate of the archi-

tect's estimates of the labor and material incorporated in the building. The aggregate of Fuqua's notes to the bank was $14,005.14. The aggregate of the estimates attached to some of the notes was $11,500. But there was no agreement that the loans to Fuqua by the bank were to be based upon estimates of the architect covering labor and material incorporated in the building; but, as a matter of business policy, in handling the loans, the bank required them to be made as the work progressed.

▮ Nor do we sustain surety's contention that the court should have limited the bank's recovery to the principal of Fuqua's notes, excluding therefrom the interest of $461.49 due on the notes. Cox & Co. agreed to pay Fuqua's notes, which necessarily included the interest.

Other propositions asserted by surety are either disposed of under our preceding holdings, or they are without merit and are overruled, and the judgment of the trial court is affirmed.

Affirmed.