UNITED STATES of America, Appellant,

v.

George F. MILLER et al., Appellees.

No. 10721.

Court of Civil Appeals of Texas.

Austin.

Jan. 20, 1960.

Rehearing Denied Feb. 10, 1960.

Charles K. Rice, Asst. Atty. Gen., Meyer Rothwacks, I. Henry Kutz, Fred E. Youngman, Attys., Dept. of Justice, Washington, D. C., Russell B. Wine, U. S. Atty., Arthur L. Luethcke, Asst. U. S. Atty., San Antonio, for appellant.

Cofer & Cofer, Douglass D. Hearne, Austin, for appellee.

HUGHES, Justice.

This suit involves the relative priority of labor liens fixed under the provisions of Art. 5486, Vernon's Ann.Civ.St.[1] and claims (based on liens and priorities) of the United States for withholding and unemployment taxes as against the assets of an insolvent taxpayer-employer.

The material facts are undisputed. They are:

Appellees are George F. Miller and nine other persons who were employees of Capitol Coach Manufacturing Company, Inc., during most of 1958. These employees were not paid their earned wages, aggregating $1,130.29 for the months of July and August, 1958. On August 30 and September 2, 1958, these employees filed liens for their unpaid wages in accordance with the provisions of Art. 5486, V.A.C.S.

On September 19, 1958, Capitol Coach was placed in receivership by the Court below. On November 4, 1958, all assets of the insolvent corporation were, by order of the Court, sold for $2,650. On January 12, 1959, appellees intervened in the receivership proceedings and prayed that their liens be foreclosed and their claims paid out of the money received from the sale of the corporate assets.

The Commissioner of Internal Revenue having assessed certain withholding and unemployment taxes against Capitol Coach, on January 22, 1959, filed notice of a Federal tax lien with the County Clerk of Travis County on January 27, 1959, in the amount of the assessed taxes.

On February 16, 1959, the Court established and foreclosed appellees' liens and ordered that the funds held by the receiver after paying costs of Court and receivership, $1,000, be applied toward the satisfaction of appellees' claims. Nothing, of course, remained for the Government.

The Trial Court filed these conclusions of law:

"1. The employees perfected and fixed their liens upon the specific property of the corporation prior to the commencement of the Receivership action and prior to the filing by the United States Government of its Federal Tax Liens.

"2. The employees' liens have priority over all other claims filed with the Receiver, including the Federal Tax Liens."

Appellant has two points the first of which is that the Court erred in not recognizing as paramount the lien of the United States under Sec. 6321, 6322 and 6323 of the Internal Revenue Code of 1954. 26 U.S.C.A. §§ 6321, 6322, 6323, respectively.

Sections 6321, 6322 and the pertinent portion of 6323 read:

"§ 6321. Lien for taxes.

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any cost that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

"§ 6322. Period of lien.

"Unless another date is specifically fixed by law, the lien imposed by sec-

---

1. The only provision of this article of significance here is the requirement " * * * that all persons claiming the benefit of this law shall have six months within which to bring suit to foreclose the aforesaid lien * * *." If suit is not so brought the lien is lost. Security Trust Co. of Houston v. Roberts, Tex. Com.App., 208 S.W. 892.

tion 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed is satisfied or becomes unenforceable by reason of lapse of time.

"§ 6323. Validity against mortgagees, pledgees, purchasers, and judgment creditors.

"(a) Invalidity of lien without notice.—Except as otherwise provided in subsection (c), the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary or his delegate—

"(1) Under state or territorial laws. —In the office designated by the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law designated an office within the State or Territory for the filing of such notice; or

"(2) With clerk of district court.— In the office of the clerk of the United States district court for the judicial district in which the property subject to the lien is situated, whenever the State or Territory has not by law designated an office within the State or Territory for the filing of such notice; or

"(3) With clerk of district court for District of Columbia.—In the office of the clerk of the United States District Court for the District of Columbia, if the property subject to the lien is situated in the District of Columbia." [2]

■ It is well settled that the effect of a lien in relation to a provision of Federal law for the collection of debts owing the

United States is always a Federal question. United States v. Security Trust & Savings Bank of San Diego, 1950, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53.

It is our opinion that the question here presented has been decided many times by the Supreme Court of the United States adversely to appellees.

In United States v. Colotta, 224 Miss. 33, 79 So.2d 474, 86 So.2d 19, by the Supreme Court of Mississippi, the question was stated to be:

"The question presented on this appeal is whether a tax lien of the United States for delinquent income taxes is prior in right to a mechanic's lien asserted under Section 356 et seq., of the Mississippi Code of 1942, where the Federal tax lien attached subsequent to the effective date of the mechanic's lien."

In the course of the opinion the Court stated:

"It is the contention of the appellant, however, that the mechanic's lien granted by the Mississippi statute, until perfected by judgment, is contingent or inchoate and that it amounts to no more than a lis pendens notice that the right to perfect a lien exists. To this we do not agree. The contention of the appellant is based upon the provision of the statute requiring that any person entitled to and desiring the benefit of the lien shall commence his suit in the circuit court within twelve months next after the time when the money became due and payable. This provision of the State statute merely provides a limitation upon the period within which suit may be begun to enforce the lien. In other words, the statute preserves the lien in effect for a period of twelve months but not

2. These provisions are in all material respects similar to those contained in Secs. 3670, 3671, 3672(a), (b), (1), and (2) of the 1939 Internal Revenue Code, 26

U.S.C.A. §§ 3670, 3671, 3672(a), (b) (1, 2) and the decisions construing the earlier statutes are deemed applicable here.

longer. The existence of the lien during this twelve months period is not disturbed."

Federal cases aside, the Mississippi Supreme Court in Colotta wrote a strong and well-reasoned opinion sustaining the priority of the mechanic's lien over the Federal tax lien.

This case was carried to the United States Supreme Court which in a memorandum opinion found in 350 U.S. 808, 76 S.Ct. 82, 100 L.Ed. 725, held, and we quote the opinion in full:

"Per Curiam. The petition for writ of certiorari in this case is granted and the judgment is reversed. Mr. Justice Douglas dissents."

In United States v. White Bear Brewing Co., Inc., 227 F.2d 359, 369, a case very similar to Colotta, the Circuit Court of Appeals for the Seventh Circuit held a recorded mechanic's lien superior to a subsequent Federal Tax Lien. In the course of the opinion it was stated:

"We think both the government and Deutsch [mechanic's lien holder] had liens and by force of the applicable statutes were, respectively required, to bring suit 'to enforce (their) liens.' Clearly, these two liens simply had different periods of gestation."

The Court, one Justice dissenting, concluded:

"Since we do not find ourselves barred legislatively from adherence to the principle of time priority enunciated in the New Britain case [United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520], still unreversed, we will follow it. Of course, the most serious deference is to be accorded Security Trust & Savings Bank [340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53], Acri [348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264], Liverpool & London Ins. Co. [348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268], and Scovil [348 U.S. 218,

75 S.Ct. 244, 99 L.Ed. 271], opinions, yet we think in the factual setting presented by the current appeal, the issue of relative priority must yield to the rule reported by Chief Justice Marshall, quoted in New Britain and adumbrated by Mr. Justice Story. We are unable to view § 3670 as a citadel for the federal tax lien invulnerable to the time when Deutsch's lien attached to the taxpayer's property."

This case was carried to the United States Supreme Court whose memorandum opinion, 350 U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871, we quote in full:

"The petition for writ of certiorari is granted and the judgment is reversed."

Mr. Justice Douglas, joined by Mr. Justice Harlan, dissented and we quote from his opinion:

"The Court apparently holds that under 26 U.S.C. § 3670, 26 U.S.C.A. § 3670, a lien that is specific and choate under state law, no matter how diligently enforced, can never prevail against a subsequent federal tax lien, short of reducing the lien to final judgment. That is new doctrine, not warranted by our decisions, and supportable only if the New Britain case were overruled."

In United States v. Vorreiter, 1957, 134 Colo. 543, 307 P.2d 475, 476, the Court considered the relative priority of mechanic's and laborer's liens over Federal tax liens. The Government contended that such liens "being inchoate, imperfected liens, are inferior to the tax liens of the United States which arose and were recorded before Vorreiter's liens were reduced to judgment." In overruling this contention the Court said:

"It must be remembered that when the federal lien attached, the improvements giving rise to the plaintiff's liens were not in existence. To permit the federal government to have the benefit

of the value of these improvements would be to present it with a windfall. If the government were to succeed, it would in effect be collecting the taxes owing by Price, by appropriating the labor and materials of the lien claimants integrated into his property in Colorado; would be unjustly enriched at the expense of third parties, these lien claimants, and would be receiving more than the property to which the lien attached. We believe and so hold that upon the record before us the government's position cannot be sustained."

We also quote from the concurring opinion of Chief Justice Moore:

"The federal statute provides that the lien claimed by the government 'shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed * * *' as provided by state law. Justice clearly requires an interpretation that the mechanics' lienholders in this case, who had no notice actual or constructive, are included within these exemptions. If this cannot be done the statute does violence to the constitution in that it deprives the workmen of the fruits of their labor without due process of law."

This case was carried to the United States Supreme Court whose memorandum opinion appears in 355 U.S. 15, 78 S.Ct. 19, 2 L.Ed.2d 23, which opinion we quote in full:

"The petition for writ of certiorari is granted. The judgment of the Supreme Court of Colorado is reversed. United States v. Security Trust & Sav. Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53."

We will review the case cited in this opinion and which we have previously cited. The question there, as stated by the Court was:

"The question presented here is whether a tax lien of the United States is prior in right to an attachment lien where the federal tax lien was recorded subsequent to the date of the attachment lien but prior to the date the attaching creditor obtained judgment." [71 S.Ct. 112.]

We quote further from that opinion:

"Hence, although a state court's classification of a lien as specific and perfected is entitled to weight, it is subject to reexamination by this Court. On the other hand, if the state court itself describes the lien as inchoate, this classification is 'practically conclusive.' People of State of Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 371, 67 S.Ct. 340, 345, 91 L.Ed. 348, [355]. The Supreme Court of California has so described its attachment lien in the case of Puissegur v. Yarbrough, 29 Cal.2d 409, 412, 175 P.2d 830, 831, by stating that, 'The attaching creditor obtains only a potential right or a contingent lien * * *' Examination of the California statute shows that the above is an apt description. The attachment lien gives the attachment creditor no right to proceed against the property unless he gets a judgment within three years or within such extension as the statute provides. Numerous contingencies might arise that would prevent the attachment lien from ever becoming perfected by a judgment awarded and recorded. Thus the attachment lien is contingent or inchoate—merely a lis pendens notice that a right to perfect a lien exists.

"Nor can the doctrine of relation back—which by process of judicial reasoning merges the attachment lien in the judgment and relates the judgment lien back to the date of attachment—operate to destroy the realities of the situation. When the tax liens of the United States were recorded Morrison did not have a judgment

lien. He had a mere 'caveat of a more perfect lien to come.' People of State of New York v. Maclay, 288 U.S. 290, 294, 53 S.Ct. 323, 324, 77 L. Ed. 754, 757.

\* \* \* \* \* \*

"In cases involving a kindred matter, i. e., the federal priority under Rev.Stat. § 3466, it has never been held sufficient to defeat the federal priority merely to show a lien effective to protect the lienor against others than the Government, but contingent upon taking subsequent steps for enforcing it. People of State of Illinois ex rel. Gordon v. Campbell, supra, 329 U.S. 374, 67 S.Ct. [340] 347, [91 L. Ed. 357]. If the purpose of the federal tax lien statute to insure prompt and certain collection of taxes due the United States from tax delinquents is to be fulfilled, a similar rule must prevail here. Accordingly, we hold that the tax liens of the United States are superior to the inchoate attachment lien of Morrison, and the judgment of the District Court of Appeal for the Fourth Appellate District is reversed."

Other United States Supreme Court cases of similar import are: United States v. Gilbert Associates Inc., 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071, United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L. Ed. 264, United States v. Scovil, 348 U.S. 218, 75 S.Ct. 244, 99 L.Ed. 271, and United States v. Liverpool & London & Globe Ins. Co., 348 U.S. 215, 75 S.Ct. 247, 99 L. Ed. 268.

We quote the following from Acri:

"In argument it was pointed out that the statute of California involved in the Security Trust Case was different because California courts had held an attachment lien to be inchoate and a mere notice of a more perfect lien to come, while Ohio courts had held it to be an execution in advance and a lien perfected as of the time of attachment. This distinction is immaterial for purposes of federal law. This case is not to be distinguished from United States v. Security Trust & Sav. Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53, and the judgment is reversed." [348 U.S. 211, 75 S.Ct. 241.]

In Liverpool the Court reversed the Circuit Court of Appeals for the Fifth Circuit, 209 F.2d 684, 687, which had held that a lien obtained under our garnishment statutes (Title 68, V.A.C.S.) was superior to federal tax liens. We quote from the opinion of the Circuit Court:

"The important question here is whether at the time the Government's income tax lien arose appellee's garnishment lien possessed 'the characteristics of a specific perfected lien which alone bars the priority of the United States.' See United States v. Knott, 298 U.S. 544, 56 S.Ct. 902, 905, 80 L.Ed. 1321. The issue thus concerns the effect of a lien in relation to a provision of federal law for the collection of debts owing the United States, which has always been considered a federal question. Hence the Supreme Court has consistently held that while a state court's characterization of a lien as specific and perfected is entitled to weight, it is subject to reexamination by the federal courts. On the other hand, if the state court itself describes the lien as inchoate, this classification is 'practically conclusive.' People of State of Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 371, 67 S.Ct. 340, 91 L.Ed. 348.

"In this case the United States first argues that under the law of Texas the lien of the appellee furniture company was inchoate and that therefore we may reverse the judgment on this basis. More specifically it argues that in Texas a garnishing creditor's rights in the property are purely potential and contingent until judgment is en-

tered establishing the garnishment lien. We do not at all agree.

"Under the law of Texas, as expressed by statute and the decisions of its highest court, a garnishment is virtually a process of attachment and the service or levy of the writ of garnishment or attachment upon personal property creates a lien from the date of the levy, giving to the creditor a paramount right to such property itself as a security for the satisfaction of his demand. Focke v. Blum, 82 Tex. 436, 17 S.W. 770; Buerger v. Wells, 110 Tex. 566, 222 S.W. 151; Kanaman v. Hubbard, 110 Tex. 560, 222 S.W. 151; United States v. Yates, Tex.Civ.App., 204 S.W.2d 399, writ refused. See also, In re Jones, D.C., 42 F.2d 269; Vol. 27 Texas Jur., Sec. 37, page 500, where the rule is announced as follows: 'The levy under a valid writ of attachment or execution places the property levied on within the custody of the law. It has, generally speaking, the effect of segregating that portion of the debtor's property which is necessary to satisfy a money judgment against him.' The United States does not claim that the appellee failed to take any step to validate its writ of garnishment in conformity with the laws of Texas. In United States v. Yates, supra, it was held that an attachment lien filed according to law was specific, perfected and fixed upon the date of its levy and took priority, as of the date the writ was served, over a lien filed by the government for withholding and social security taxes filed subsequently thereto, but before the judgment of the court established and foreclosed the attachment lien. We think this decision correctly sets forth the law of Texas, regardless of what might be the law in other jurisdictions. The authorities cited by the government are clearly distinguishable on their facts and do not at all

support its contention that in Texas, a garnishing creditor's rights in the property at the time of garnishment are 'purely potential and contingent.' On this phase of the question the appellee furniture company must prevail."

We quote the following from the opinion of the United States Supreme Court reversing the Circuit Court:

"The question of priorities is identical with that of, United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, [99 L.Ed. 264] and United States v. Security Trust & Sav. Bank, 340 U.S. 47, 71 S. Ct. 111, 95 L.Ed. 53. On the authority of those cases we hold the tax liens of the United States superior to the lien of the garnisher." [348 U.S. 215, 75 S.Ct. 248.]

With respect to our statute involved here (Art. 5486) which requires institution of a suit to foreclose the lien we call attention to the case of Higginbotham-Bailey Logan Co. v. Bellah, 79 S.W.2d 907, by the Fort Worth Court of Civil Appeals, which holds that a laborer's lien under this statute conferred no possessory rights on the lienholder. This but illustrates the restrictive character of the lien and the need for judicial process to render it beneficial.

■ Unless our decision is to suffer the same fate as that suffered by decisions of the Supreme Courts of Mississippi and Colorado, the Circuit Court of Appeals for the Fifth Circuit and other courts, we must decree superiority of the Federal tax liens.

It is our opinion that in the above cases every conceivable reason has been pressed upon the Supreme Court to change the course of law in regard to the question before us, all to no avail. Further discussion, if not impossible, is certainly futile.

Appellees specifically and additionally contend that since the property of the Cap-

itol Coach was placed in receivership and sold before the Government filed its tax liens there was no property or rights to property under section 6321, 26 U.S.C.A., supra, to which the liens could attach.

■ It is true that the property of Capitol Coach altered its form from chattels to cash by the receiver's sale. Assuming the legality of the sale, the proceeds constitute property and is subject to proper disposition by the receivership court. Sec. 112, Receivers, Vol. 36 Tex.Jur.[3]

Besides if appellees are correct then since the property was sold before they sued to, as they say, "foreclose their liens upon the property of the corporation" there would be no property to foreclose upon. Appellees, however, prayed that their claims be satisfied from the cash the receiver had realized from the sale of the corporation property. The United States asks no more.

Appellees also contend that since the United States had no lien when the corporation was placed in receivership it could not subsequently obtain a lien on the property in the receiver's hands. The Texas authorities cited to support this point are 11-A Tex.Jur., Corporations, Sec. 641, p. 71 and the cases it cites. We quote from Sec. 641:

> "Liens upon corporate property are not destroyed by the appointment; but after a liquidating receivership has been ordered a creditor may not acquire a lien on corporate assets by legal process."

■ The liens of the Government were acquired by operation of law, paramount Federal law. They were not acquired through any legal process. Even so no State law could deny them effectiveness.

If there remains any doubt about our decision then consideration should be given to the following portion of Sec. 191, Title 31 U.S.C.A.

> "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; * * *"

We are satisfied that our decision is correct independently of this statute and for this reason we will not prolong this opinion by reviewing the many cases construing it.

The judgment of the Trial Court is reversed and this cause is remanded with instructions to accord appellant priority over appellees in the payment of their respective claims.

Reversed and remanded with instructions.

---

**3.** "The form into which property changes is not material, for equity will follow the property into whatever form it may assume in order to secure it for the person entitled to it." 18 C.J.S. Conversion § 2 p. 46.