Julius SELIGMANN, Jr., Appellant,

v.

HILL & COMBS, a Partnership, et al., Appellees.

No. 13609.

Court of Civil Appeals of Texas.

San Antonio.

July 20, 1960.

Rehearing Denied Aug. 31, 1960.

Trueheart, McMillan, Russell & Westbrook, San Antonio, for appellant.

Carl Wright Johnson, Edward P. Fahey, Nat L. Hardy, San Antonio, for appellees.

POPE, Justice.

We grant appellees' motion for rehearing, withdraw our former opinion, and affirm the trial court's judgment with this substituted opinion.

Julius Seligmann, Jr., appealed from a judgment which denied his claim as assignee to funds due Zoller Electric Company, a building sub-contractor, and granted judgment for Aetna Casualty and Surety Company as assignee of the funds. Defendant Hill & Combs was the general contractor and is a mere stakeholder. The dispute is between Seligmann and Aetna. The legal problems in the case are: (1) Did Seligmann have a statutory protected assignment to the funds retained by the contractor? (2) Did he have an assignment at all to the funds? (3) Did Aetna have an assignment to the same funds?

On October 1, 1954, Zoller Electric Company made an accounts receivable contract with Seligmann. On September 5, 1956, it made another accounts receivable contract by which Zoller agreed to assign its present and future accounts to Seligmann. Notice of this accounts receivable contract was recorded in the County Clerk's office on September 7, 1956, and it, together with subsequent specific assignments, is the basis for Seligmann's claim to a protected assignment under Article 260–1, Vernon's Tex. Civ.Stats.

On October 25, 1956, Zoller made a sub-contract to install the eletrical work in the Highland High School in San Antonio, on which he later defaulted and on which Aetna suffered a loss of $51,348.45 on its performance bond. On April 17, 1957, Zoller contracted to install the electrical system in Terrell Plaza Shopping Center in Bexar County, and on that date executed an assignment to Aetna in consideration of Aetna's giving its performance and payment bond to the general contractor, Hill & Combs. Aetna relies upon this assignment.[1]

1. "Fourth: That the said company, as surety on said bond, as of this date, shall be subrogated to all rights, privileges and properties of the principal(s) in said contract, and said principal(s) do hereby assign, transfer and convey to said company all the deferred payments and retained percentages arising out of this contract, and any and all monies and properties that may be due

Between January and April, 1958, Zoller executed and delivered to Seligmann six specific assignments.[2] On June 23, 1958, Zoller defaulted on both the Highland High School and the Terrell Plaza jobs. Aetna completed the Highland High School job at a cost to it of $51,348.45. The general contractor completed the Terrell Plaza job at a small cost of $205.06, and after completion the general contractor still held $9,509.28, which had been retained and unpaid to Zoller. Out of those funds, the general contractor discharged mechanics' liens totalling $4,671.33, and as stakeholder still retains $4,837.95, which both Seligmann and Aetna claim as assignees.

Seligmann did not have a protected assignment under Article 260–1, supra. His proof on this point is the accounts receivable contract dated September 5, 1956, the notice filed two days later, and the six assignments given between January and April, 1958. Protected assignments of accounts receivable are governed by Article 260–1, Vernon's Tex.Civ.Stats. The 1955 statute defined the terms "account" and "account receivable."[3] As defined, the terms did not in-

and payable to said principal(s) at the time of the happening of any of the occurrences mentioned in clauses one, two, three, four and five of the next preceding paragraph, or that may thereafter become due and payable to said principal(s) on account of this contract or on account of extra work or materials supplied in connection therewith, hereby agreeing that all such monies and the proceeds of such payments and properties shall be the sole property of the said company, and to be by it credited upon any loss, damage, charge and expense sustained or incurred by it as above set forth under any bond of suretyship it has executed for the undersigned principal(s)."

2. The first assignment is here set forth, and the others are similar except for the amounts assigned.

"The undersigned, in accordance with contract and obligations, dated the 1 day of Oct. A. D. 1954, hereby transfers and assigns to The Seligmann Company, San Antonio, Texas, the following *current accounts receivable* for merchandise, the same being pledged to the Company pursuant to the terms of said contract.

"The undersigned represents that the accounts hereinafter listed are *current accounts receivable* for merchandise and not subject to any consignment agreements; that none of the same is past due; that the amount owing on each is *correctly stated; and no note, trade* acceptance, or other instruments of value, has been given in connection therewith; that full and complete deliveries have been made in accordance with the specifications of the debtor; that in no case is the amount owing disputed by the debtor, or subject to any account, set-off, or counterclaim, *nor is the payment contingent upon the fulfillment of any contract;* and the undersigned guarantees full payment of each account at the maturity thereof.

| "Date of Invoice | Invoice Number | Name of Debtor | Address | Terms and Due Dates | Face Amount of Invoice |
|---|---|---|---|---|---|
| "1/20–58 | Est. 15 | Hill & Combs–321 Melrose Pl. "Terrell Plaza Shopping Ctr. | | | $3,000.00 |

"Zoller Electric Co.

"(Signed)  By E. G. Zoller     "

———◆———

3. "(1) 'Account' or 'Account Receivable' means an existing or future right to the payment of money presently due, or to become due (a) under an existing contract or under a future contract entered into during the effective period of the notice of assignment hereinafter provided for; * * *. 'Account' or 'account receivable' however shall not include any sums of money accruing to a contractor for labor and/or material performed and/or furnished on any public or pri-

clude money accruing to a contractor on a construction contract where the assignor had furnished a surety bond guaranteeing the performance of the contract. Seligmann argues that the provision gave preference to a surety, which it did, and because it did, Seligmann's assignment did not fall within the statutory definition. In 1957 the statute was amended,[4] perhaps because of an intent to remove the preference. However, by the new definition, an assignment to be protected must describe the land upon which the improvements are to be constructed. After the 1957 amendment, Zoller gave his six additional assignments to Seligmann, but they wholly failed to describe the land upon which the improvements were constructed. Hence, Seligmann failed to bring his assignments within either the 1955 or the 1957 definition of the term "account" or "account receivable," and he did not have a protected assignment.

█ Alternatively, Seligmann asserts that the six assignments from Zoller, executed between January and April, 1958, entitled him to prior rights to the $4,837.95 in the hands of the stakeholder. Aetna attacks the form and sufficiency of the assignments, but we regard them as adequate. They each identify the creditor, the debtor, the amount due, the job on which the work was done, the name of the contractor, his street address, the date of the invoice and its number. This was sufficient identification. Aetna's further objection that the body of the assignment states that it is for current accounts receivable for "merchandise" is also unfounded. Taken

as a whole, the assignments sufficiently disclose what was assigned.

The pivotal point, however, is the determination of exactly what Zoller assigned by these instruments. Seligmann reasons that Zoller, by each assignment, assigned him all that was presently due as well as all funds which would become due on the Terrell Plaza job, including the funds retained by the general contractor. Aetna replies and the trial court held that the assignments reached none of the funds retained by the general contractor. An examination of the written documents rather clearly discloses that Zoller has never assigned to Seligmann any part of the funds retained by the general contractor.

█ In stating the manner in which Zoller should receive his pay, the contract between Zoller and the general contractor provided: "The contractor agrees to pay the Sub-contractor for the performance of his work * * *. On or about the 15th day of each month, 90% of the value of the work in place on the last day of the preceding month, less the total of all previous payments. Final payment in full thirty days after acceptance of the completed project by the Architects and owner." Whether we term the ten percent withheld by the contractor as "retainage", as Aetna argues, or as a "final payment," as Seligmann argues, is not decisive. The contract provided and the facts show that a percentage was withheld until a future date. With this as the underlying situation, on January 23, 1958, Zoller assigned to Seligmann $3,000.[5] Subsequent assignments were

---

vate construction contract where such assignor (contractor) has furnished a surety bond guaranteeing the performance of the contract and/or the payment of labor and/or material bills incurred thereon." General and Special Laws of the 54th Legislature, Regular Session, 1955, p. 822.

4. " * * * 'account' or 'account receivable' shall not include any sums of money accruing to a contractor for labor performed or material furnished on any pub-

lic or private construction contract unless the assignment properly describes the land upon which the improvements are to be constructed and such assignment filed in the office of the County Clerk of the county wherein the land lies; which assignment shall not be effective prior to such filing." General and Special Laws of the 55th Legislature, Regular Session, 1957, p. 818.

5. See footnote 2.

made on January 31, of $5,000; on February 20, of $5,000; on March 4, of $4,000; on March 24, of $7,000, and on April 1, of $3,000. Each instrument speaks for itself as to what was assigned to satisfy those specific amounts. Each assigned the "current accounts receivable." They were assignments of presently owing sums of money as of the respective dates of the assignments. In fact the assignments each excluded any other funds by expressly providing, "nor is the payment contingent upon the fulfillment of any contract * * *." Since the assignments reached funds which were already due, and not contingent upon the fulfillment of any contract, they did not reach funds which were withheld and would continue to be withheld for a "full thirty days after acceptance of the completed project by the architects and owner." All of the specific assignments were executed about three months before the default on the contract and its subsequent completion of the contract. In other words, Zoller assigned and only assigned funds which were presently due. The assignments did not reach the funds retained in the contractor's hands, which were not then due.

■ Zoller's assignment to Aetna, however, was of "all the deferred payments and retained percentages arising out of this contract, and any and all moneys and properties that may be due and payable to said principal(s) at the time of the happening of any of the occurrences mentioned in,"[5] the earlier provisions of the contract. Zoller assigned to Aetna the retained funds to be "by it credited upon any loss, damage, charge and expense sustained or incurred by it as above set forth under any bond or suretyship it has executed for the undersigned principal(s)." Aetna had suffered a loss of $51,348.45 on its bond covering the Highland High School job. Hence the contesting claims are resolved by determining just what was assigned to each of the claimants. Seligmann's assignments by

their express terms did not reach any of the funds retained in the hands of the contractor; Aetna's assignment by its express terms did reach the retained funds.

We accordingly grant Aetna's motion for rehearing and affirm the judgment of the trial court.