**SOUTH MAIN STATE BANK, Appellant,**

v.

**The STATE of Texas et al., Appellees.**

No. 11053.

Court of Civil Appeals of Texas.

Austin.

March 6, 1963.

Rehearing Denied March 27, 1963.

Vinson, Elkins, Weems & Searls, James Greenwood, III, and Dave McNeill, Jr., Houston, for appellant.

Will Wilson, Atty. Gen., F. C. Jack Goodman, Asst. Atty. Gen., Austin, Butler, Binion, Rice & Cook, William E. Wright, Houston, Earnest Morgan, U. S. Atty., William O. Murray, Jr., First Asst. U. S. Atty., San Antonio, Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Joseph Kovner, Fred E. Houngman, Washington, D. C., for appellees.

ARCHER, Chief Justice.

This appeal is from a judgment of the Trial Court in a garnishment proceeding, unfavorable to appellant.

The State filed suit on May 1, 1961 against Refinery Construction Company for delinquent unemployment taxes, and obtained a judgment on June 14, 1961.

On the same day the suit was filed the State instituted this garnishment suit against Rohm & Haas Company, which filed its answer admitting an indebtedness to Refinery Construction Company in an amount of $26,146.89, and impleaded the United States, South Main State Bank, W. D. Gunnels Company, and other named creditors no longer parties to the suit.

The Bank intervened, alleging that it had an assignment of accounts receivable

from Rohm & Haas Company involving the same money garnished, and claimed the entire amount. The United States intervened by virtue of tax liens placed of record May 22, 1961. The Gunnels Company intervened on the basis of a judgment obtained against Refinery Construction Company.

The suit was tried before the Court without a jury and judgment was rendered in favor of the United States for its full claim of $10,782.29, in favor of the State for its claim of $6,251.95, in favor of the Bank, for $6,057.47 and in favor of Gunnels for $1,-763.66 and an attorney's fee of $850.00 to Rohm & Haas.

Findings of facts and conclusions of law were requested and made by the Trial Court. Briefly the fact findings at issue in this case are that the funds impounded is a sum of money accruing to Refinery Construction Company from Rohm & Haas Company, for labor performed or material furnished, on a private construction contract.

That the assignment executed by Refinery Construction Company in favor of South Main State Bank, as indicated, was an attempted assignment of "account", or "account receivable" under Article 260—1, and does not describe the land upon which the improvements were to be constructed.

The appeal is by the Bank alone, and is founded on seven points assigned as error, and are that the Court erred in failing to find that the appellant is entitled to a priority over the claims of appellees, in refusing to find as a fact that the accounts receivable assigned to the Bank by the Refinery Construction Company were accounts then due and owing from Rohm & Haas to Refinery Construction Company under the terms of a contract performed in Harris County, in holding as a matter of law that the Bank had no lien on the accounts, in finding as a matter of law that, even as between Refinery Construction Company and the Bank, the assignments were invalid, in holding as a matter of law that the Bank was only a general creditor of Refinery Construction Company, in holding that the United States has a first and prior lien on the accounts by virtue of its tax lien, and in holding that the State as a matter of law by virtue of its Writ of Garnishment has a lien on the funds, secondary only to that of the United States.

Appellant contends that it is entitled to the entire fund now in the registry of the Court, originally in the hands of Rohm & Haas and was owed to Refinery Construction Company for work done in the latter part of 1960 and early part of 1961, and was due and owing as of March 25, 1961, and the right to all of such money was assigned to the Bank by Refinery Construction Company to secure its indebtedness to the Bank, by successive assignments executed on January 7, January 19, and March 25, 1961, and the specific invoices assigned were listed.

By the assignment of January 7, 1961 there was due the Refinery Construction Company under invoices to Rohm & Haas dated January 5 and 6, 1961, a total of $27,-002.63 and were assigned to the Bank as security for indebtedness of Refinery Construction Company to the Bank including $30,102.50 advanced on January 7, 1961. Subsequent assignments were made to the Bank, and additional advances were made, and all were properly filed in the County Clerk's office in Harris County.

On March 25, 1961, a note for $31,612.49 was executed by the Refinery Construction Company to the Bank. Some payments were made on this note before the State filed the suit and had secured the issuance of the Writ of Garnishment.

The appellees take the position that the judgment is correct and supported by the law and the facts in this case, and say that the controlling question is whether or not under Section 1 of Article 260—1, V.A.C.S., the appellant Bank has an assignment of the garnisheed funds.

948

Appellee, United States, says that the Federal Tax Lien arose from unpaid assessments made by the District Director of Internal Revenue, against the Refinery Construction Company for withholding taxes assessed for the 4th quarter in 1960 in the amount of $567.72, and for the 1st quarter in 1961 in the amount of $12,377.91, which amount was subsequently reduced by set off to the balance of $10,782.29, and that the liens were perfected and are entitled to priority over other adverse claims against the property of the delinquent tax payer as of the date they arose, and cite: United States v. City of New Britain, Conn., 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520. Glass City Bank of Jeanette, Pa. v. United States, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56. Michigan v. United States, 317 U.S. 338, 63 S.Ct. 302, 87 L.Ed. 312. United States of America v. George F. Miller, et al., Tex. Civ.App., Austin, 331 S.W.2d 436, certiorari denied, 364 U.S. 880, 81 S.Ct. 168, 5 L.Ed.2d 102.

We will consider what is called the controlling question in this appeal, which is: Were the assignments of accounts receivable invalid because they failed to describe the land upon which improvements had been erected, and did not conform to the express wording of Article 260—1, requiring the description of the land to be in the assignment.

Article 260—1, V.A.C.S., Section 1, defines "account" or "account receivable" as meaning an existing or future right to the payment of money presently due, or to become due, and is followed by phrases (a), (b), (c) and (d) down to the word assignor; and continues "account" or "account receivable" shall not include any sum of money accruing to a contractor for labor performed, or material furnished on any public or private construction contract unless the assignment properly describes the land upon which the improvements are to be constructed and such assignment filed in the office of the County Clerk of the County wherein the land lies, which assignment shall not be effective prior to such filing.

There can be no question but that the money sought to be assigned was money accruing to a contractor for labor performed or material furnished on a private construction contract.

Holland Howell, President of Refinery Construction Company, testified in part as follows:

"Q  Mr. Howell, in what type of business was Refinery Construction Company engaged?

"A  Industrial construction business.

"Q  Can you tell us more about it, what that business was?

"A  Construction work in the refineries, chemical and petrochemical plants in the Houston area.

"Q  Well, what would your accounts receivable consist of?

"A  Moneys due for payment of work performed at these industries.

"Q  In other words, all your accounts receivable would be for labor or material?

"A  Yes.

"Q  * * * How did this indebtedness of Rohm & Haas Company to Refinery Construction Company arise?

"A  From services performed.

"Q  What were the services?

"A  Construction work in their plant at Deer Park.

"Q  At Deer Park?

"A  Yes.

"Q  What type of construction work was that, was there performed?

"A  Oh, setting equipment, installing pipe, digging and setting foundations. Work of that nature.

"Q And this construction was performed on property of Rohm & Haas?

"A Yes.

"Q On land—

"A * * * owned by Rohm & Haas Company, yes.

"Q Was this construction a fixed installation?

"A Yes. Yes, it was a permanent installation.

* * * * * *

"Q Mr. Howell, I understand from your previous testimony here that all of the money evidenced by the assigned accounts offered in evidence by South Main State Bank was for labor performed or material furnished by Refinery Construction Company under its construction contract with Rohm & Haas?

"A Yes."

The assignments read in part:

"ASSIGNMENT AND NOTICE OF ASSIGNMENTS OF ACCOUNTS

(Pursuant to Article 260–1, Revised Statutes of Texas)

" * * * Assignor warrants that each of the said accounts receivable is an 'account receivable' within the meaning of that term as set forth in Article 260–1, Revised Statutes of Texas."

There were other warranties by the assignor which we do not copy herein, the last line of which reads:

"Notice of this assignment is hereby given pursuant to Article 260–1, Revised Statutes of Texas."

There was no description of the land involved in the construction contract in the assignments. The money sought to be assigned was not brought within the definition of an "account" or "account receivable" as defined in the 1957 amendment, and only by describing the land can such money be included as an "account" or "account receivable", and be assignable under the Statute.

Seligmann v. Hill & Combs, a Partnership, et al., Tex.Civ.App., 338 S.W.2d 178, er. ref., n. r. e.

We do not believe that appellant's assignment was protected under the statute and was ineffective to defeat the attachment of the fund in question by garnishment and subsequent interpleader through the actions of the parties, and appellant was merely a general creditor entitled to a pro rata share of funds disbursed to the impleaded general creditors.

We believe that the Trial Court's judgment was correct, and in addition to the cases hereinabove mentioned we cite the case of Parker Square State Bank et al. v. Triangle Supply Company et al., Tex. Civ.App., 364 S.W.2d 418 and the authorities therein cited, in which case the Court reviewed the authorities and the development of the law of assignments and set out the amendments, and there is no need to restate such herein, and we believe such holding to be correct.

The judgment of the Trial Court is affirmed.

Affirmed.

HUGHES, Justice (dissenting).

Assuming that the assignment to the South Main State Bank of Houston was not in proper form to be filed,[1] I believe that

---

1. The 1957 amendment to Art. 260—1 provides that an account shall not include money accruing to a contractor for labor performed or material furnished on any public or private construction contract

unless the assignment "properly describes the land upon which the improvements are to be constructed." The emergency clause to this amending Act provides, in part, "The fact that the present defini-

our decision should be controlled by the judgment of the Supreme Court in Quinn v. Dupree, 157 Tex. 441, 303 S.W.2d 769. In the recent case of Parker Square State Bank v. Triangle Supply Co., 364 S.W.2d 418 cited to us by Appellees, and relied upon in the majority opinion, Judge Grissom, for the Eastland Court, in referring to Quinn states: "The opinions do not disclose whether notice of the assignment was recorded. Article 260—1 was not mentioned. If the assignment was recorded our interpretation of the statute would require the judgment rendered by the Supreme Court.", the inference being that if the assignment was not filed, the judgment was erroneous. I have examined the record in such case and it does not appear therefrom that the notice of the assignment to the Pittsburgh National Bank by Quinn of all sums of money due him under his contract with Lone Star Steel Company was filed in compliance with and in order to make it a protected assignment under the provisions of Art. 260—1, V.A.C.S. Without proof of such, the case must have been determined under principles of general law. The assignment to the Pittsburgh bank was dated January 6, 1954. Writs of garnishment were sued out by creditors of Quinn against Lone Star March 6, 1954, and on April 5, 1955, under which money owing by Lone Star to Quinn was impounded. The Supreme Court held that the assignment to the bank prevailed over the subsequent garnishments. The Supreme Court did not mention Art. 260—1 in its opinion. Neither was such Article mentioned in the briefs of the parties in that case. In my opinion there was no necessity to mention such Article in that case. It was simply not involved. No one claimed to have a "pro-

tected assignment" under that Article; hence, there was no need to discuss it.

It is my opinion that Appellees here, and the Trial Court,[2] have read into the statute provisions and a meaning which it does not contain and which, in fact, it actually and affirmatively refutes. Such statute has been read and construed as if it provided that all assignments not coming within its provisions are void, and that all assignments coming within its provisions and notice of which is not filed as required by the statute are also void. Nothing could be further from the facts. There simply are no such provisions in the statute. This Act is not a "no action shall be brought" statute like the Statute of Frauds, Art. 3995, V.A.C.S. The statute gives full protection to those assignments which come within its terms and as to which compliance with the statute has been made. It goes no further. It does not invalidate any assignment.

Sec. 2 of the Act defines a protected assignment. It is an assignment in writing of an account as defined in the Act, fully describing it, and by filing for record the notice of assignment.

Sec. 6 of the Act prescribes the protection afforded by taking and filing notice of an assignment as authorized by Sec. 2. Such Section provides, inter alia, that no prior or subsequent assignee of the assignor "holding an assignment not protected" shall "have, or be deemed to have acquired, any right in the account or accounts so assigned or in the proceeds thereof, or in any obligation substituted therefor, *superior* to the rights therein of the assignee named in such prior protected assignment." (Italics added)

---

tion of 'account' or 'account receivable' prevents contractors from obtaining in-, terim financing by pledging accounts receivable" etc. (Italics added.)

The language of the amendment an the use of the word "interim", in the emergency clause supports the position of Appellant that if the improvements contracted for were complete when as-

signment of money due under the contract was made, then there was no necessity to describe the land on which improvements had already been constructed in the assignment.

2. The Trial Court concluded as a matter of law that the Bank assignments were of "no force or effect whatsoever" even as between the assignor and assignee.

This language certainly is not susceptible to the construction that unprotected assignments are void, that no rights are vested thereunder. It simply provides for a priority in favor of a protected assignee. The rights of an unprotected assignee are clearly recognized to the extent that they exist but are inferior to the rights of the protected assignee.

Sec. 1(1) (d) of the Act defining an "account" in construction contracts and providing that the "land upon which the improvements are to be constructed" should be described in the assignment of the account also states "which assignment shall not be effective prior to such filing." Since Art. 260—1 is a notice statute and does not purport to change or create any rules of substantive law, it is my opinion that the last phrase of (d), supra, means only that such assignment shall be ineffective as notice unless prepared and filed as required by the Act.

The Dallas Court of Civil Appeals in Asch v. First National Bank in Dallas, 304 S.W.2d 179, writ ref., n. r. e., rendered similar judgment in a situation exactly paralleling the one found in Quinn v. Dupree, supra, the only difference being that in Asch it affirmatively appeared that the prior assignment of an account had *not* been filed. This unfiled but prior assignment was held superior to subsequent garnishments.

The Court in Asch did not mention Art. 260—1, although by reference to the fact that the assignment had not been filed it is a fair assumption, I believe, that the attorneys, as well as the Courts, were fully aware of its existence.

I repeat that there was no occasion for anyone connected with Asch to mention Art. 260—1. It was not involved. It had no bearing on the rights of the parties.

In Tezel & Cotter v. Roark, 301 S.W.2d 179, San Antonio Civil Appeals, writ ref., n. r. e., the Court simply enforced Art. 260—1 to protect an assignee who had complied with its terms. The same Court performed an identical service in Scarborough v. Victoria Bank & Trust Co., Tex.Civ. App., 250 S.W.2d 918, writ ref.

In Seligmann v. Hill & Combs, Tex.Civ. App., 338 S.W.2d 178, writ ref., n. r. e., the same Court merely held that the funds in controversy were not within the terms of a prior filed assignment; hence, there was no assignment.

The same Court in Keeran v. Salley, Tex. Civ.App., 244 S.W.2d 663, writ ref., held that an instrument stating that the assignor "has assigned or intends to assign one or more accounts to" the Bank without designating specific accounts or contracts assigned or to be assigned was insufficient and even though filed as required by Art. 260—1 did not give the Bank priority over a subsequent garnishment of accounts accruing to the assignor after the date and filing of the assignment. The Court held that filing notice under the statute was not authorized and was not notice for the reason that Art. 260—1, as it then read, limited the notice under it to accounts due or to become due under existing contracts. Since there were no existing contracts when the assignment was executed, filing the assignment gave no protection to the assignee.

While the Court, in Salley, did not discuss the validity of the assignment apart from Art. 260—1, if it had done so it would, no doubt, have concluded that it was invalid as between the parties.

In McKneely v. Armstrong, 109 Tex. 363, 210 S.W. 192, the Court held that an assignment of wages in any employment for any employer was void.

In Globe Indemnity Co. v. West Texas Lumber Co., Tex.Civ.App., 34 S.W.2d 896 (1930) this Court held:

"Future earnings or profits under a contract not yet made have no potential existence, and any attempt to assign them is void." We followed this decision in Vilbig v. State, Tex.Civ.App., 318 S.W.2d 10, writ ref., n. r. e.

In the Victoria Bank case, supra, the Court stated, in reference to Art. 260—1, in its original form, that "From the wording of the act itself it appears that its purpose was to encourage accounts receivable financing. * * * *A change is made in the common law rule as to priority of assignments of accounts.* This was accomplished by a setting forth of a method whereby a notice of assignment could be filed in a public place and thus become 'protected assignment.'" (Italics added.) I completely embrace this pronouncement.

The emergency clauses in the original and in the amending Acts [3] confirm the purpose, stated by the Court, for which this statute was enacted. This purpose does not include enlarging the rights of creditors to a priority status over prior but unfiled assignments of accounts. The Court, in Victoria, also very correctly notes the permissive nature of the Act, reflected by the use of the word "may" in Sections 2 and 3 of the Act,[4] by stating that notice of assignment "could" be filed.

Sec. 6 of Art. 260—1, provides, in part, that as to a person, in good faith, taking a protected assignment "all creditors of, and all subsequent assignees, purchasers and transferees of or from the assignor *shall be conclusively deemed to have received notice of such assignment*" dating from the time of filing. (Italics added)

In Mitchell, Gartner & Thompson v. Young, 135 S.W.2d 308, Fort Worth Civil Appeals, writ ref., the Court construed Art. 6636, V.A.C.S. which provided for the transfers of judgments by filing a written transfer among the papers of the case. The statute further provided, "When said transfer is duly acknowledged, filed and noted as aforesaid, the same shall be full notice and valid and binding upon all persons subsequently dealing with reference to said cause of action or judgment, whether they have actual knowledge of such transfer or not."

Involved was a contract between a prior but unfiled transfer of a judgment and subsequent garnishments. In holding that the owner-transferee of the judgment was entitled to priority the Court stated:

"In speaking of such assignments as the one before us we find the following language in Vol. 5 Tex.Jur., page 29, para. 23: 'The purpose of this statute is merely to furnish parties dealing with the cause notice of the assignments, and it is not intended that it should affect the validity of any sale of a cause of action, or any part thereof, or the sale of a judgment.'

\* \* \* \* \* \*

"[4] We do not believe that Art. 6636, R.C.S., was enacted to protect either an attaching creditor or a garnishing creditor. When a creditor sues out a writ of attachment, or of garnishment, he does so at his peril. He simply takes his chances of attaching property that may or may not belong to his debtor, or of garnishing funds that may or may not belong to his debtor.

"[5] If Young had filed his assignment among the papers in the suit filed by D. H. Purvis & Son against Anderson et al., that would not have added validity to his assignment, and his failure to do so would not detract from its validity."

This opinion is, to me, very persuasive authority for concluding that Art. 260—1 means what the Court stated it meant in Victoria, supra, and that it was not enacted! for the benefit of creditors of the assignor.

It is elemental that failure to register or file an instrument required or authorized to be filed for the purpose of giving notice

---

3. Ch. 293, p. 463, Acts 49th Leg.Reg. Sess.1945; Ch. 305, p. 822, Acts 54th Leg.Reg.Sess.1955; Ch. 348, p. 818, Acts 55th Leg.Reg.Sess.1957.

4. Sec. 2, "may be protected"; Sec. 3, "may be filed."

is not rendered void between the parties by such failure. Chattel Mortgages, 12 Tex.Jur.2d Sec. 30, p. 41.

It is also settled beyond question, except such as may be raised by Art. 260—1, that an assignment of debt or fund supported by a valuable consideration has priority over subsequent attachment or garnishment for a debt of the assignor. Assignments, 6 Tex.Jur.2d Sec. 49, p. 439.

It is my opinion that the pledge to the South Main State Bank should be honored and granted priority over the claims of Appellees. I respectfully dissent.